Donna JAYCOX,
Claimant/Respondent/Cross–Appellant,

v.

GENERAL AMERICAN LIFE INSUR-
ANCE COMPANY, Employer/Respon-
dent,

and

President Riverboat Casino,
Employer/Appellant.

No. 74432.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 30, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 5, 1999.

Application to Transfer Denied
June 29, 1999.

Kevin M. Leahy, Robyn G. Fox, Catherine M. Vale, Moser and Marsalek, St. Louis, for appellant, President Riverboat Casino.

Betsy S. Willer, Evans & Dixon, St. Louis, for respondent, General American Life Ins.

William S. Beatty, Gerald R. Walters, Peel, Beatty & Motil, Edwardsville, IL, for respondent, cross-appellant, Donna Jaycox.

RICHARD B. TEITELMAN, Judge

Donna Jaycox ("Claimant") filed a claim against two successive employers for carpal tunnel syndrome to her right hand resulting from repetitive motions. The issues presented in both claims were medical causation, the application of the last exposure rule, the question of whether or not Claimant's injuries were an occupational disease and whether or not Claimant's symptoms arose out of, and in the course of, her employment. President Riverboat Casino ("President"), Claimant's second employer, now appeals from the Final Award of the Labor and Industrial Relations Commission which affirmed the decision of the ALJ in finding that President was liable under the last exposure rule for Claimant's permanent partial disability.

*Factual and Procedural Background*

Claimant was hired by General American Life Insurance Company ("General American") to work in its Law Division as a secretary in May of 1988, and remained in that position for over four years. While in the Law Division, Claimant's job duties included typing and answering the phone. She spent approximately 80% of her day typing. Claimant was later transferred to the Service Center, where the job entailed 25–30% less typing. Claimant last worked at General American in November of 1993.

Claimant began experiencing problems with her right hand in approximately 1989. She also had pain in her arm and wrist. In April of 1991, she complained of pain in her right hand. She was diagnosed with tendinitis, and received a settlement from General American in the amount of $1,000 representing disability of 3% of the right wrist. In October of 1991, Claimant noticed a lump on her right hand. The lump was diagnosed as a ganglion cyst and surgery was performed to remove it. Claimant received a settlement from General American in the amount of $2,295.88, representing a disability of 5% of the right wrist plus two weeks for disfigurement.

During 1992, Claimant continued to have hand complaints. At that time, she was examined and told that her problems were due to tendinitis. Claimant saw Dr. Stephen M. Benz because of pain in her right hand and night pain. He prescribed anti-inflammatory medication and splints for her hand. A nerve conduction study taken at the time showed no evidence of carpal tunnel syndrome.

Claimant saw Dr. Benz three times in 1993. She was continued on anti-inflammatory medication and was given a cortisone injection in her wrist. Dr. Benz again prescribed a splint.

After transferring to the Service Center at General American in October of 1993, Claimant developed another ganglion cyst on her right hand. Dr. R. Evan Crandall examined it. During his examination, he suspected that she had carpal tunnel syndrome, however, he ordered a nerve conduction study, the results of which were negative.

In November of 1993, Claimant again suffered from pain in her hands. By the time of Claimant's last day of work for General American, her pain and numbness had increased from the pain she had experienced earlier. Claimant saw Dr. Crandall on her last date of employment with General American.

After leaving General American, Claimant worked part time for a temporary agency, performing primarily secretarial and office duties. Claimant worked as a

temp for a total of one month, and there was no consistency in the amount of keyboarding required of Claimant in her temporary work.

In late 1993, Claimant signed up for dealer school at the President Casino. During January and February of 1994, Claimant worked part time in the Human Resources Department at the President while going to dealer school to learn how to deal blackjack. Approximately 50% of Claimant's work involved typing.

Claimant began dealing for the President on Memorial Day weekend in 1994. During the course of her work as a dealer, Claimant did not experience symptoms that were new in kind, but her symptoms worsened. Claimant testified that she was never pain-free in her right hand for any period longer than a month subsequent to 1993.

The activities of dealing, collecting bets and paying customers involved the use of both hands. Claimant testified that in doing her job as a dealer, if you want to make money you need to be fast. She was taught to work quickly in dealer school.

Claimant worked in 1½ hour rotations, spending a half-hour at each of three tables, then taking a half-hour break and starting again. Claimant worked an eight-hour shift from 8:00 p.m. to 4:00 a.m. She usually worked a 40–hour week.

From Memorial Day, 1994, to September of 1994, Claimant worked full time as a blackjack dealer and her right hand symptoms became significantly worse. Claimant would lose complete control over her hand and at times lost control over the deck of cards. Claimant experienced the most problems in late July and August of 1994. By mid-September of 1994, Claimant's pain was so bad that she was in tears while dealing. In late September of 1994, Claimant told her employer that she could not deal anymore because of the pain. Claimant did not seek medical treatment

at all between the time that she left General American and this date in September of 1994.

Upon being informed that Claimant was in too much pain to perform her job, the President sent her to Dr. Benz. Dr. Benz examined Claimant on September 21, 1994 and determined that she needed carpal tunnel release surgery. He told Claimant to wear her splint at all times. When Claimant reported to the President, she was told she could not wear the splint at work pursuant to Missouri Gaming Commission Rules and they had no work available for her.

Claimant was off from work until December 30, 1994. The President let her begin work greeting people as an ambassador on December 31, 1994. During early 1995, Claimant continued working as an ambassador for approximately one month but found the pay to be insufficient. Claimant obtained a work release from Dr. Benz, then returned to work full time as a dealer in February of 1995. Subsequent to February 9, 1995, Claimant experienced pain in her right hand while dealing cards. She could not wear the splint while dealing, and only wore it approximately half the time during her break periods.

Claimant continued to work as a dealer until September of 1995, when she informed the President that her hand complaints had become severe again.[1] She was told to go home and see a doctor.

Dr. Benz performed carpal tunnel release surgery on Claimant in December of 1995. After the surgery, Claimant's pain subsided significantly. On January 6, 1996, Claimant returned to work for the President's Human Resources Department. She is currently employed at the President and has not been dealing blackjack since she returned to work.

In addition to performing hand-intensive tasks at work, Claimant also enjoys bowling and has bowled on and off for 18–20

---

1. Claimant was off from work from May 10, 1995 to June 21, 1995 because a flood caused the President to be closed. Claimant received unemployment compensation for that period.

years. She bowled before experiencing trouble with her hands while working at General American. When Claimant's hand complaints began in 1989, she was bowling three nights a week. When Claimant bowls, she wears a glove with a metal strip inside that keeps her from flexing or extending her wrist.

At the hearing before the Administrative Law Judge, Dr. Crandall testified that when he saw Claimant on November 23, 1993, he did not believe that Claimant had carpal tunnel syndrome because her nerve conduction study and EMG tests were negative. He stated that Claimant's work at General American was not relevant to the condition that Dr. Benz treated in 1995. He did not believe that Claimant's work at General American was a substantial factor resulting in the diagnosis for which Dr. Benz performed the surgery. Dr. Crandall's report that the need for Claimant's surgery could not possibly be from her work at General American because Claimant could not have tendinitis that would persist from typing from 1993 to December 8, 1995. Further, each of the nerve conduction studies that were performed on Claimant while she was at General American was negative.

Dr. Crandall testified that he would allocate responsibility for Claimant's injury to Claimant's bowling and blackjack dealing since those were the last hand-intensive activities engaged in by Claimant. He was certain that dealing was a hand-intensive activity because he had been to similar casino boats and had personally evaluated blackjack dealers for the purpose of assessing ergonomics. He found that blackjack dealers have a hand-intensive job with 45–50 wrist movements per minute. Dr. Crandall testified that this activity is more hand-intensive than typing.

Dr. Shawn Berkin also testified. He examined Claimant for the first time in November of 1995. Accordingly, he had no first hand knowledge of Claimant's condition while she was still working at General American.

Based upon the examination he performed and the history given to him by Claimant, Dr. Berkin's testimony was that she was experiencing symptoms of an overuse tendinitis of the right wrist, a recurring ganglion cyst, and carpal tunnel syndrome of the right wrist. He diagnosed Claimant with carpal tunnel syndrome because she demonstrated tenderness over the front of the wrist, her Phalen's test was positive, and her Tinel's test was negative.

In Dr. Berkin's opinion, Claimant's employment at General American constituted a substantial contributing factor in the development of her medical condition. Since she first developed symptoms to her right hand in May of 1991, during which time she worked for General American and since she was treated for symptoms to her right hand for over two years before working at the President, Dr. Berkin felt that her condition was a result of the secretarial work that she performed for General American. Further, it was Dr. Berkin's opinion that, of all Claimant's job duties and nonoccupational activities, the most hand-intensive was typing.

Although Dr. Berkin felt that the work Claimant performed as a blackjack dealer was not the significant factor in causing the onset of her condition, it aggravated her condition and triggered her symptoms.

Dr. Benz testified that blackjack dealing was conducive to the development of carpal tunnel syndrome and that it could aggravate the condition. He also testified that it could produce tendinitis or could aggravate or exacerbate tendinitis. It was Dr. Benz's opinion that Claimant's dealing activities on the President could aggravate or produce complaints of pain in Claimant's wrists and/or that it could intensify her complaints.

Further, Dr. Benz testified that bowling on a regular basis could produce tendinitis. It was his opinion that bowling can be a substantial factor in the development of tenosynovitis or carpal tunnel syndrome.

He testified that if someone was to inflame their tendons from bowling, that could inflame their median nerve, which could produce carpal tunnel syndrome.

Dr. Benz testified that bowling, casino dealing, and secretarial work would all have produced stress on Claimant's wrist. In his opinion, each of these activities could have played some role in the development of carpal tunnel syndrome in Claimant.

On June 24, 1997, the ALJ rendered his award allowing compensation for Claimant's carpal tunnel injury. He found that Claimant suffered a 10% permanent partial disability and held the President liable for Claimant's carpal tunnel injury because the tests performed on Claimant prior to her employment with the President indicated that she did not have the disease. Moreover, Claimant used repetitive motion while working for both employers, therefore the President is liable for Claimant's injury under the last exposure rule.

The Commission affirmed the ALJ's Award, with one Commissioner dissenting. The President now appeals.

I.

█ The President argues in its first two points that the Commission erred in finding it liable because there was not sufficient competent and substantial evidence that Claimant was exposed to the hazard of carpal tunnel syndrome while employed at the President. Therefore, the Commission erred in finding the President liable under the last exposure rule. We disagree.

█ This court can disturb the Commission's decision only if there is no competent and substantial evidence to support the Commission's award or, in the alternative, such evidence is clearly contrary to the overwhelming weight of the evidence. *Cook v. Sunnen Products Corp.*, 937 S.W.2d 221, 224 (Mo.App. E.D.1996). We defer to the Commission on credibility of witnesses and the weight to be accorded

their testimony. *Decker v. Square D Company*, 974 S.W.2d 667, 670 (Mo.App. W.D. 1998). We will not disturb the choice of one medical opinion over another by the Commission unless the choice clearly results from an abuse of discretion. *Id.*

In the case at bar, Dr. Benz testified that both employers exposed Claimant to repetitive motion, while Dr. Crandall testified that Claimant's work at General American did not cause her condition. It is clear from the record that the Commission had competent and substantial evidence before it from which it could determine that Claimant was exposed to repetitive motion trauma both while employed at General American and while employed at the President. The President's first two points are denied.

II.

█ The President next argues that the Commission erred in finding it liable for workers' compensation benefits when the uncontradicted evidence was that the President hired Claimant in good faith reliance on the public policy of Missouri workers' compensation law which places liability for preexisting conditions on the previous employer or on the second injury fund.

This case can be directly contrasted with *Arbeiter v. National Super Markets, Inc.*, 990 S.W.2d 142 (Mo.App. E.D. 1999). In *Arbeiter*, the claimant developed carpal tunnel syndrome from repetitive motions required by her duties as a checker/cashier for National Super Markets, Inc. The claimant was diagnosed with carpal tunnel syndrome less than three months after another supermarket chain, Schnucks Markets, Inc. ("Schnucks"), purchased the grocery store where the claimant worked and became the claimant's employer. Thus, the claimant filed her claim for compensation after she had become employed by Schnucks.

National argued on appeal that Schnucks was the last employer to expose

the claimant to the repetitive motions causing her condition, and that therefore, Schnucks should be liable for the claimant's workers' compensation claim under the last exposure rule. This Court disagreed, stating that "[j]ust as an employer who hires someone after they file a claim for injury cannot be responsible for the injury 'for which claim is made,' exposure to repetitive motion after an employee has been diagnosed as suffering from occupational disease due to repetitive motion cannot be the 'cause' of the disease." *Arbeiter*, at 145. The claimant in that case had been diagnosed with carpal tunnel syndrome within three months after she was employed by Schnucks; therefore Schnucks was entitled to show under Section 287.067.7 that her employment with Schnucks did not cause her to develop the disease.

In the case at bar, it is undisputed that Claimant had experienced problems with her hands while she was working at General American and prior to beginning work at the President. However, when Claimant was working at General American, she was diagnosed with and treated for recurring ganglion cysts and tendinitis, not carpal tunnel syndrome.[2] Claimant was not diagnosed with carpal tunnel syndrome until after she began working for the President. Therefore, the President is incorrect in its assertion that Claimant had a preexisting condition for which the President is not liable under workers' compensation law.

■ The President was the last employer to expose Claimant to the hazard of carpal tunnel syndrome. Therefore, the President is presumptively liable for Claimant's compensation. The only exception to the last exposure rule is in Section 287.067.7, which provides:

> With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence establishes that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

Claimant began working for the President as a blackjack dealer on Memorial Day weekend in 1994. She was diagnosed with carpal tunnel syndrome in September of 1994. Claimant worked for the President for more than three months before the diagnosis, therefore Section 287.067.7 is not applicable to the case at bar and does not absolve the President of liability. Point denied.

### III.

In light of our denial of the President's first three points on appeal, the President's remaining points lack merit. No error of law exists. There is competent and substantial evidence to support the Commission's Award and it is not against the weight of the evidence. Rule 84.16(b).

Though Claimant also filed a notice of appeal, she has not raised any points of error and her appeal is deemed abandoned. Claimant's appeal is dismissed.

The Commission's Award is affirmed.

Presiding Judge JAMES R. DOWD and Judge LAWRENCE G. CRAHAN, concur.

---

2. The medical evidence presented to the ALJ and Commission indicates that ganglion cysts and tendinitis are not related to carpal tunnel syndrome.