Dorothy ARBEITER, Respondent,

v.

NATIONAL SUPER MARKETS,
INC., Appellant.

No. 74011.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 16, 1999.

Randee E. Schmittdiel, Chesterfield, for appellant.

Diekemper, Hammond, Shinners, Turcotte and Larrew, St. Louis, for respondent.

CRAHAN, Presiding Judge.

Employer National Super Markets, Inc. ("National") appeals an award of permanent partial disability, temporary total disability and medical expenses in favor of Dorothy Arbeiter ("Claimant"). Claimant suffers from carpal tunnel syndrome resulting from repetitive motions required by her duties as a checker/cashier at a grocery store. The sole issue on appeal is whether National or Claimant's subsequent employer Schnucks Markets, Inc. ("Schnucks")[1] should be responsible for paying the compensation ordered by the Commission. We affirm.

The parties do not dispute the facts as found by Administrative Law Judge ("ALJ") William Newcomb and adopted by the Commission.

In 1987 Claimant began work at National and worked there until June 11, 1995. On June 12, 1995, Claimant went to work

1. Schnucks was not a party to the case below and is not a party to this appeal.

for Schnucks, which had bought the National store where Claimant worked.

Claimant's primary duty at both employers was checking groceries. At National the claimant stacked cigarettes off and on during her shift whereas at Schnucks this was not part of her work duties. Also, at National Claimant unloaded the customers' grocery carts whereas at Schnucks the customers unloaded their own carts.

Prior to working at National, Claimant had no medical problems or injuries to her hands. In 1992 and 1993 Claimant began to have problems with her hands. She had tingling, stiffness and pain up her arms. Her left hand was worse.

On May 10, 1995, Claimant saw her family physician who referred her to Dr. Weeks. Dr. Weeks examined Claimant on June 9, 1995 and referred her for nerve conduction studies on that day. After those studies Dr. Weeks recommended to Claimant a "decompression of the median and ulnar nerves at her left wrist which was bothering her most and then subsequently at her right wrist."

Dr. Weeks reported the above information to Claimant's family physician by letter on June 12, 1995 (coincidentally, the date Schnucks took over the store) and indicated Claimant was considering his recommendation and would subsequently tell Dr. Weeks what she wanted to do. In this letter Dr. Weeks mentioned Claimant's history as a checker at National for eight years. Claimant sent her medical bills for the above diagnosis to her private health insurance carrier. They responded on or about June 22, 1995, that Claimant's condition was "occupational in character."

On July 7, 1995, the Claimant contacted National by telephone regarding her medical condition. On July 17, 1995, Claimant contacted National by mail with an "Employee Accident Report." On this report Claimant stated the date of the "injury" (the form did not refer to occupational disease) was "unknown." Also on July 17, 1995, Claimant provided the employer with an "Employer's Questionnaire." The employer required this. This questionnaire also asked the date of "injury."

On August 1, 1995 National's attorney wrote to Claimant, rejected Claimant's occupational disease as non-compensable and suggested that Claimant look to Schnucks for relief because Schnucks was the "location of last exposure." National gave five reasons for the denial:

1. Lack of timely notice of complaints.
2. No medical diagnosis as a National employee.
3. Unauthorized medical treatment.
4. No medical records.
5. No loss of work time.

Claimant, on her own, responded to the above letter on August 3, 1995. Essentially, she did not consider her condition work-related until her private health insurer told her it was work-related. Further, she stated she had been diagnosed with the condition while working for National and surgery had been recommended then.

On August 9, 1995, National's legal department wrote Claimant and stated they had set up a "diagnostic appointment" with a hand specialist, Dr. Kendall. On August 15, 1995, Dr. Kendall examined Claimant and reached the same diagnosis as Dr. Weeks: bilateral carpal tunnel syndrome as well as compression of ulnar nerve through the guyons canal. Dr. Kendall found Claimant was a surgical candidate and stated she was a surgical candidate at the time Dr. Weeks examined her on June 9, 1995. Dr. Kendall also found that Claimant's work at National was the substantial cause of the condition.

Claimant attempted conservative treatment (splints and non-steroidal anti-inflammatories) and then went on vacation. When she returned she informed Dr. Kendall she wanted surgery. Surgery was performed on October 11, 1995 on the left hand and on October 23, 1995 on the right hand, followed by physical therapy. Claimant was released to return to work on December 21, 1995. On January 6,

1996, Claimant filed her claim for compensation against National.

Dr. Kendall found Claimant's permanent partial disability ("PPD") to be 12½% of the left wrist and 10% of the right wrist. Further, he stated Claimant's work at Schnucks exacerbated or aggravated her condition from June 1995 until the surgery. When Dr. Kendall saw Claimant on August 15, 1995, he told her he did not believe she would respond to conservative treatment. He believed she was going to require surgery. Further, Dr. Kendall believed Claimant had probably reached a surgical level by the time she saw Dr. Weeks on June 9, 1995. Finally, Dr. Kendall stated Claimant's work at National from July 1987 through June 1995 was a substantial cause of her carpal tunnel syndrome and ulnar nerve compression.

Dr. Musich found the Claimant sustained a 30% PPD of the right wrist and a 35% PPD of her left wrist.

The ALJ found that Claimant has permanent partial disability of 17½% relating to her right wrist and 22½% relating to her left wrist, justifying a multiplicity factor of 10% due to the injury of both wrists at the same time. Claimant was also awarded 2.81 weeks of temporary total disability, unpaid medical expenses and two weeks of disfigurement. By a 2 to 1 vote, the Commission affirmed the ALJ's award.

The sole issue to be decided in this case is whether the Commission properly applied the "last exposure rule" for occupational diseases set forth in section 287.063 RSMo 1994[2] and the exception to such rule set forth in section 287.067.7.

Section 287.063 provides:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 7 of section 287.067, RSMo.

2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

It is undisputed that Schnucks was the last employer to expose Claimant to the hazard of the occupational disease for which she filed her claim. Schnucks is therefore presumptively the employer liable for compensation unless relieved of such responsibility by virtue of section 287.067.7, which provides:

With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence establishes that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

The ALJ found that section 287.067.7 shifted liability to National because Claimant had worked for Schnucks for less than three months when, on August 15, 1995,[3] National's treating doctor diagnosed Claimant's carpal tunnel syndrome and found that her work at National was the substantial cause of her condition. On appeal, National urges that this analysis is inconsistent with the Missouri

2. All statutory references are to RSMo 1994 unless otherwise indicated.

3. The ALJ acknowledged that Claimant's personal physician had diagnosed her condition on June 9, 1995 but deemed the August diagnosis to be more significant because her personal physician had not expressly identified Claimant's work as the cause of her condition. Because under our analysis either date would shift liability to National, we need not determine whether the June diagnosis would been sufficient to satisfy the statutes.

Supreme Court's analysis in *Johnson v. Denton Construction Co. et al.*, 911 S.W.2d 286, 288 (Mo.banc 1995) and subsequent appellate court decisions applying the rule of *Johnson.* According to National, these cases establish that "the date the claim is filed" is the controlling date. Therefore, National asserts, Schnucks must be the responsible employer because it was undisputed that Schnucks had exposed Claimant to the repetitive motion found to have caused her disease for more than three months prior to the filing of her claim on January 5, 1996. We disagree.

*Johnson* involved an interpretation of section 287.063.2, the "last exposure rule," not section 287.067.7, the three months exception at issue in this case.[4] The claimant in *Johnson* filed his claim for bilateral carpal tunnel syndrome against Denton a few days after Denton terminated him. He later worked for another employer where he was exposed to similar repetitive motion. Denton urged that the subsequent employer should be liable because that was where he was last exposed to the hazard. The Missouri Supreme Court disagreed, observing that Denton's argument ignored the phrase in section 287.063.2 "for which claim is made." Because the claimant in *Johnson* had not even started working for the subsequent employer at the time he filed his claim, that employer could not be responsible for the occupational disease "for which claim is made." Thus, the Missouri Supreme Court observed, "[t]he starting point in applying the last exposure rule is that the employer liable for compensation is the last employer to expose the employee to the occupational hazard prior to the filing of the claim." 911 S.W.2d at 288.

Although the date the claim was filed was clearly dispositive in *Johnson,* in other cases it may well be, as the Missouri Supreme Court observed, the "starting point." In this case, as we have already observed, Schnucks is presumptively the responsible employer because it was Claimant's employer on the date the claim was filed and had exposed her to the repetitive motion that was the hazard of her occupational disease. What is at issue is whether National, as the previous employer which also exposed her to the hazard of the disease, should be held responsible pursuant to the three month exception set forth in section 287.067.7.

Just as the Missouri Supreme Court did in *Johnson,* in interpreting the meaning of section 287.067.7 we must look first to the language of the statute. Unlike section 287.063, section 287.067.7 does not employ the phrase "for which claim is made." Rather, with respect to timing, the operative phrase in section 287.067.7 is "if the exposure to the repetitive motion *which is found to be the cause of the injury* is for a period of less than three months...."

Unlike section 287.063, the focus of the three month exception set forth in section 287.067.7 is not the date the claim is filed but the determination that repetitive motion has resulted in an occupational disease. Just as an employer who hires someone after they file a claim for injury cannot be responsible for the injury "for which claim is made," exposure to repetitive motion after an employee has been diagnosed as suffering from occupational disease due to repetitive motion cannot be the "cause" of the disease. The subsequent exposure may increase the symptoms of the disease but it cannot be the cause of the disease. Thus, only exposure prior to the diagnosis of occupational disease due to repetitive motion should be considered. If the employer on the date the claim is filed has exposed the employee to the repetitive motion found to be the cause of the disease for less than three months at the time the disease is diagnosed, *and* exposure to the repetitive motion by a prior employer is shown to be the substantial contributing factor, liability is shifted to the prior employer. If the diagnosis does not occur until after three

---

4. Section 287.067.7 was not enacted until 1993, well after the claim at issue in *Johnson* was filed and would not, in any event, have applied to the facts presented.

months exposure or the previous employment cannot be shown to be the substantial contributing factor, the subsequent employer remains liable pursuant to section 287.063.

This interpretation is also consistent with the overall statutory approach. Although medical science has now advanced to the stage where doctors can, to a reasonable degree of medical certainty, diagnose occupational disease and identify the types of repetitive motion that cause it, it is impossible for doctors to state precisely when a compensable injury occurred. Whether a compensable injury has occurred can be determined only by examination and testing. An employee might well have been diagnosed to be suffering from the same occupational disease months or even years before if she had been examined earlier but there is simply no way to determine that after the fact.

We do know, however, that development of occupational disease from repetitive motion does not occur overnight. Recognizing this fact and the difficulty in pinning down the precise date of causation, the legislature enacted the three month exception set forth in section 287.067.7 so that *if* the exposure by the employer was for less than three months at the time the disease is diagnosed *and* exposure to repetitive motion by a prior employer is the substantial contributing factor to the injury, the prior employer will be held responsible.

Although the other cases relied upon by National did not find it necessary to undertake a detailed analysis of the language of section 287.067.7, their holdings appear to be consistent with our analysis. In *Walker v. Klaric Masonry, Inc.* 937 S.W.2d 219 (Mo.App.1997), for example, the subsequent employer proffered expert opinion that the radial tunnel syndrome which was the subject of the claim likely co-existed with, but was masked by, "lateral epicondylitis with exterior tendinitis" for which the claimant's previous employer provided treatment. *Id.* at 220. It is not entirely clear from the facts set forth in the opinion but it appears that the diagnosis of radial tunnel syndrome did not occur until after the claimant had been exposed to the hazard of repetitive motion by the subsequent employer for some time. *Id.* This court held that the Commission properly refused to consider evidence that the previous employment was the cause of the radial tunnel syndrome because the three month exception was not applicable. *Id.* Unless the three month exception is applicable, the presumption that liability attaches to the last employer to expose the employee to the hazard prior to the filing of the claim is conclusive and causation is not to be considered. *Id.* This is entirely consistent with our analysis above.

In *Crabill v. Hannicon,* 963 S.W.2d 440, (Mo.App.1998), we held that the employer failed to raise section 287.067.7 before the Commission and also failed to offer any evidence that the claimant's work for a previous employer was the "substantial contributing factor" in her development of carpal tunnel syndrome. 963 S.W.2d at 444. Further, it is clear from the court's recitation of the chronology that the diagnosis of carpal tunnel syndrome did not occur until the employee had been exposed to the hazard of repetitive motion by the subsequent employer for more than a year. *Id.* at 442. Likewise in *Bissell v. Paramount Cap Manufacturing Co.,* the diagnosis of carpal tunnel syndrome did not occur until the employee had been engaged in repetitive motion activities for the subsequent employer for more than three months. 962 S.W.2d at 15. Section 287.067.7 was therefore inapplicable and the Commission was held to have properly imposed liability on the subsequent employer.

For the foregoing reasons, we affirm the award of the Labor and Industrial Commission.

RICHARD B. TEITELMAN, J. and LAWRENCE E. MOONEY, J., Concur.