Cecilia CUBA, Claimant/Appellant,

v.

JON THOMAS SALONS, INC., Employer/Respondent,

and

Secura Insurance Company, Insurer/Respondent.

No. ED 77249.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 26, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 9, 2000.

Application for Transfer Denied Jan. 23, 2001.

---

544

James Joseph Sievers, Clayton, for appellant.

Teresa W. Jeffery, John J. Johnson, Jr., Law Office of Brown & James, St. Louis, for respondent.

SHERRI B. SULLIVAN, Judge.

Cecilia Cuba ("Cuba") appeals from the decision of the Labor and Industrial Relations Commission ("Commission") affirming the decision of the Administrative Law Judge ("ALJ") denying Cuba's workers' compensation claim for permanent partial disability. In its decision, the Commission adopted the date the claim was filed as the date the inquiry begins for purposes of assessing liability for both the last exposure rule and the three-month rule. A dissenting opinion argued that the date of diagnosis is to be used when applying the three-month rule. We agree with the dissent, and thus we reverse and remand the Commission's decision.

Cuba worked as a hair designer for Jon Thomas Salons, Inc. ("Jon Thomas") from August 8, 1983 to April 27, 1995. Cuba worked eight hours per day, 40 hours per week for approximately 12 years at Jon Thomas. Cuba's job duties included cutting, coloring, perming, and highlighting hair, activities that involved extensive use of her hands.

Leading up to February 1995, Cuba began to notice numbness and tingling in her hands, and she sought treatment from her private physician, Dr. Donald DiPasco ("Dr.DiPasco"). Dr. DiPasco diagnosed Cuba with bilateral carpal tunnel syndrome, and he prescribed bilateral wrist splints. After this diagnosis, Jon Thomas filed a Report of Injury with the Division of Workers' Compensation on February 24, 1995, stating that the injury was due to repetitive use of the hands with implements of the trade.

Subsequent to her diagnosis by Dr. DiPasco, Cuba continued her employment at Jon Thomas. On April 17, 1995, Cuba met with Dr. Phillip George ("Dr. George"), an employer-provided physician, for pain in her wrists. Based upon an electromyogram ("EMG") and a nerve conduction test of both wrists, Dr. George diagnosed Cuba with carpal tunnel syndrome on May 8, 1995. He recommended surgery, but Cuba decided to take a more conservative approach to treatment by quitting her full-time job as a hair designer at Jon Thomas and returning to school.

On August 7, 1995, Cuba again saw Dr. George and reported that she was doing well with no ongoing symptoms of numbness, tingling, weakness, or swelling in either hand. Cuba told Dr. George that she was going to school and that she was designing hair approximately 18–19 hours per week. Dr. George's opinion was that Cuba would continue to do well as long as she did not design hair 40 hours per week. Based on this visit, Dr. George believed that Cuba did not need surgery. In a supplemental report, dated·November 20, 1995, Dr. George stated that he found Cuba to have a 0% permanent partial disability.

Cuba filed a Claim for Compensation with Jon Thomas and Secura Insurance Company ("Secura") on August 26, 1996, for $56,454 in accordance with Section 287.430 [1] requiring workers' compensation claims to be filed within two years after

1. All statutory references are to RSMo (1994),    unless otherwise indicated.

the date of injury. On August 29, 1996, Jon Thomas and Secura denied the claim.

On November 14, 1996, Cuba visited a third physician, Dr. David Volarich ("Dr. Volarich"), concerning her wrists. Dr. Volarich diagnosed Cuba with carpal tunnel syndrome with a 30% permanent partial disability.

In August 1998, a hearing was held before an ALJ of the Division of Workers' Compensation. In December 1998, the ALJ denied Cuba's "demands for future medical treatment, temporary disability benefits and permanent partial disability." In January 1999, Cuba filed an Application for Review with the Commission. In November 1999, the Commission affirmed the decision of the ALJ denying Cuba's claim, with one member of the three-member panel dissenting.

Section 287.495 provides the standard of review for the appellate court in workers' compensation cases. It provides in relevant part:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) that the commission acted without or in excess of its powers; (2) that the award was procured by fraud; (3) that the facts found by the commission do not support the award; (4) that there was not sufficient competent evidence in the record to warrant the making of the award.

In determining the sufficiency of the evidence in a workers' compensation case, the appellate court reviews the evidence and inferences in the light most favorable to the Commission's award. *Landers v. Chrysler Corp.*, 963 S.W.2d 275, 279 (Mo.App. E.D.1997). The Commission's decision shall be overturned only if it is unsupported by substantial evidence or clearly contrary to the overwhelming weight of the evidence. *Id.* The appellate court will disregard any evidence that might support a finding different from the Commission's even though the evidence may have been sufficient to support contrary findings. *Id.* Decisions of the Commission which are clearly interpretations or applications of law are reviewed for correctness without deference to the Commission's judgment. *Tidwell v. Kloster Co.*, 8 S.W.3d 585, 588 (Mo.App. E.D.1999).

We address Cuba's second point on appeal first. Cuba argues that the Commission erred in determining liability for the last exposure rule under Section 287.063 and the three-month rule under Section 287.067.7 based on the date of the claim rather than on the date of the diagnosis. Carpal tunnel syndrome is a known occupational disease. *Weniger v. Pulitzer Publishing Co.*, 860 S.W.2d 359, 360 (Mo. App. E.D.1993). Workers' compensation claims for occupational diseases are analyzed under Section 287.063 of the Missouri Workers' Compensation Act. *Hunsicker v. J.C. Industries, Inc.*, 952 S.W.2d 376, 381 (Mo.App. W.D.1997). Thus, we must determine whether the Commission properly applied the last exposure rule for occupational diseases set forth in Section 287.063 and an exception to this rule set forth in Section 287.067.7.

Section 287.063 provides:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 7 of section 287.067, RSMo.

2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

Section 287.067.7 provides:

With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

■ In its decision, the Commission stated that its interpretation of Section 287.067.7 is supported by case law with the purpose of developing a bright line rule. We find that the Commission erred in its interpretation of Section 287.067.7. In *Arbeiter v. Nat'l Super Markets,* 990 S.W.2d 142, 145 (Mo.App. E.D.1999), we held that, based upon rules of statutory interpretation, liability under Section 287.067.7 is determined by the date the occupational disease was diagnosed rather than the date the claim was filed. "Unlike section 287.063, section 287.067.7 does not employ the phrase 'for which claim is made.' Rather, with respect to timing, the operative phrase in section 287.067.7 is 'if the exposure to the repetitive motion *which is found to be the cause of the injury* is for a period of less than three months....'" *Id.*

■ The language in Section 287.067.7 supports our conclusion that the legislature intended the three-month time frame to refer to the date of diagnosis. Repetitive motion injuries take time to manifest themselves. There is no logical reason to provide a three-month period to file a claim for a repetitive motion injury. The logical interpretation is that the legislature believed that because repetitive motion injuries do not occur overnight, it is necessary to determine whether the current job or the previous job actually caused a repetitive motion injury to an employee. The legislature determined that an employer who exposes an employee to a form of repetitive motion for less than three months may not be liable for an injury if that employee was exposed to a form of

repetitive motion by a prior employer and that prior exposure is found to be the substantial contributing factor to the injury. Thus, interpreting Section 287.067.7 to refer to the date of diagnosis comports with legislative intent and provides a bright line rule for repetitive motion injuries.

■ Furthermore, our interpretation of Section 287.067.7 supports the purpose of the Workers' Compensation Act. "Provisions of [section 287.063] and section 287.067 were intended to provide complete and workable arrangements for compensation of those disabled by occupational diseases." *Enyard v. Consolidated Underwriters,* 390 S.W.2d 417, 423 (Mo.App. 1965). To interpret Section 287.067.7 otherwise would provide an incentive to employers to terminate at-will employees diagnosed with a repetitive motion injury. One of the unique aspects of repetitive motion injuries is that conservative treatment, which may include reducing exposure to the repetitive motion and wearing night splints, often provides an alternative to more intrusive surgery and, as this case illustrates, may be desired by the employee. Employees may be reluctant to attempt a more conservative approach to treatment knowing that they may be terminated and miss the opportunity for compensation for surgery. An employer may also be reluctant to hire an individual diagnosed with a repetitive motion injury knowing that if the employee opts for surgery or submits a claim for disability, the employer could be liable for that employee's claim.

■ To interpret the language of Section 287.067.7 to refer to the date of the claim contravenes both the legislative intent and the purpose of the Workers' Compensation Act. Accordingly, we hold that Section 287.067.7 refers to the date of diagnosis and not the date of the claim for purposes of assessing liability for both the last exposure rule under Section 287.063 and the three-month rule under Section

287.067.7. Based upon the date of diagnosis, May 8, 1995, Cuba's self-employment exposed her to the repetitive motion for less than three months.

In its decision, the Commission cites *Johnson v. Denton Construction Co.,* 911 S.W.2d 286 (Mo. banc 1995), for the proposition that the Missouri Supreme Court determined that the date the claim is filed determines liability. However, in *Johnson,* the Court did not address the issue of whether the date of diagnosis or the date of the claim determines liability. Section 287.067.7 was not in effect when Johnson's claim was filed. The Court found that the claim was filed immediately after Johnson left Denton, and therefore, it did not have to address the issue of whether the date of diagnosis or the date of the claim was the determining factor. Thus, the Court did not apply the last exposure rule as a bright line rule. Although *Johnson* is often cited in support of using the date of the claim to determine liability, the Court actually avoided answering the question because both the date of diagnosis and the date of the claim were prior to Johnson's subsequent employment, and the Court determined that Denton was the last employer to expose Johnson to the hazard for which the claim was made.

The Commission cites a number of other cases to support the date of the claim as providing a bright line rule for liability.[2] However, the cases the Commission cites to support this interpretation of Section 287.067.7 actually indicate that there is no bright line rule established. In each case, the court analyzed the facts presented and determined the outcome, not based solely upon the date the claim was filed, but rather upon an analysis of all the evidence presented, including the date of the report of injury, the date of diagnosis, and the date of the claim. *Arbeiter* is the first case in which the interpretation of Section 287.067.7 is directly analyzed, and it is the only case that provides a bright line rule for the interpretation of Section 287.067.7.

Accordingly, Cuba's point two on appeal is granted.

■ We now address Cuba's point one on appeal. Cuba argues that the Commission erred in relieving Jon Thomas of any liability for her carpal tunnel syndrome because the evidence supports the conclusion that Cuba's employment at Jon Thomas was the substantial contributing factor to her carpal tunnel syndrome. The Commission found that Cuba's self-employment as a hair designer substantially caused her disability and not her employment at Jon Thomas.

■ The Commission based its finding upon Dr. George's deposition testimony in which he stated that, although he would be speculating, a cause of the increased symptoms in Cuba's hands between her visit to him in August 1995 and her visit to Dr. Volarich in November 1996 may be either that "she got back to doing hair 45 hours a week or she read a textbook which reported the symptoms of carpal tunnel syndrome." Based upon the results of Cuba's November 1996 visit to Dr. Volarich, Dr. Volarich found that Cuba's work as a hair designer at Jon Thomas leading up to the time that she saw Dr. DiPasco in February 1995 was the substantial contributing factor to her carpal tunnel syndrome. However, the Commission found Dr. George's testimony more credible than Dr. Volarich's testimony. "We will not disturb the choice of one medical opinion over another by the Commission unless the choice clearly results from an abuse of discretion." *Jaycox v. General American Life Ins. Co.,* 992 S.W.2d 240, 244 (Mo.App. E.D.1999).

**2.** *See, e.g., Bull v. Excel Corp.,* 985 S.W.2d 411 (Mo.App. W.D.1999); *Bissell v. Paramount Cap Mfg.,* 962 S.W.2d 13 (Mo.App. S.D.1998); *Feltrop v. Eskens Drywall and Insulation,* 957 S.W.2d 408 (Mo.App. W.D.1997); *Hunsicker v. J.C. Industries, Inc.,* 952 S.W.2d 376 (Mo. App. W.D.1997); *Coloney v. Accurate Superior Scale Co.,* 952 S.W.2d 755 (Mo.App. W.D. 1997); *Anderson v. Noel T. Adams Ambulance District,* 931 S.W.2d 850 (Mo.App. W.D.1996); and *Walker v. Klaric Masonry, Inc.,* 937 S.W.2d 219 (Mo.App. E.D.1996).

Dr. George's deposition testimony and records related to his visits with Cuba support a finding that Cuba's work at Jon Thomas was the substantial contributing factor to her carpal tunnel syndrome. Dr. George saw Cuba on three different occasions, April 17, 1995, May 8, 1995, and August 7, 1995. During the April 17 visit, Dr. George advised Cuba to undergo the necessary tests to make a diagnosis. On May 8, he diagnosed Cuba with carpal tunnel syndrome based upon the results of an EMG and a nerve conduction test of both wrists. Dr. George recommended surgery at this time. On August 7, Dr. George found that Cuba's symptoms did not indicate a need for surgery. However, in his deposition, Dr. George testified that once the results of an EMG and nerve conduction test are found to be abnormal, the results "rarely return to totally normal without some form of treatment, usually involving [surgery]."

In sum, Dr. George diagnosed Cuba with carpal tunnel syndrome and recommended surgery less than two weeks after Cuba left Jon Thomas. Based upon this evidence, we find that Cuba's approximately 12 years as a hair designer at Jon Thomas was the substantial contributing factor to her carpal tunnel syndrome. Her subsequent self-employment was not the substantial contributing factor to her occupational disease diagnosed on May 8, 1995. "The subsequent exposure may increase the symptoms of the disease, but it cannot be the cause of the disease." *Arbeiter*, 990 S.W.2d at 145.

Additional evidence supports a finding that Cuba's work at Jon Thomas was the substantial contributing factor to her carpal tunnel syndrome. Dr. DiPasco diagnosed Cuba with carpal tunnel syndrome while Cuba was working at Jon Thomas, and Jon Thomas filed a Report of Injury stating that the injury was due to repetitive use of the hands with implements of the trade while Cuba was working at Jon Thomas.

Accordingly, Cuba's point one on appeal is granted.

Section 287.067.7 establishes an exception to the last exposure rule under Section 287.063 for an occupational disease due to repetitive motion. This three-month rule exception applies in this case. Therefore, because the date of diagnosis is the controlling date in determining whether a prior employer is liable under Section 287.067.7, because Cuba was diagnosed with carpal tunnel syndrome less than two weeks after leaving Jon Thomas, and because Cuba's work at Jon Thomas was the substantial contributing factor to her occupational disease, we find Jon Thomas liable for Cuba's claim.

In light of our conclusions for Cuba's points one and two on appeal, her points three, four, and five are moot. Accordingly, the decision of the Commission is reversed and remanded for further proceedings consistent with this opinion.

LAWRENCE E. MOONEY, P.J., and PAUL J. SIMON, J., concur.

