Gary L. DUDLEY, deceased, and Myrna Jean Dudley, Employee/Respondent,

v.

CITY OF DES PERES, Employer/Appellant,

and

Treasurer of the State of Missouri, Custodian of the Second Injury Fund, Additional Party.

No. ED 79941.

Missouri Court of Appeals, Eastern District, Division Four.

March 5, 2002.

Martin Klug, Law office of Evans & Dixon, St. Louis, MO, for appellant.

Ray Gerritzen, St. Louis, MO, for respondent.

Leslie A. Phillips, St. Louis, MO, for Treasurer of Missouri.

SHERRI B. SULLIVAN, Presiding Judge.

### Introduction

The City of Des Peres (Employer) appeals from the decision of the Labor and Industrial Commission (the Commission) awarding survivor benefits, funeral expenses and medical expenses to Myrna Jean Dudley (Respondent) for the death of her husband Gary Dudley (Employee) pursuant to Sections 287.140 and 287.240.[1] We affirm.

### Statement of Facts and Proceedings Below

In February 1996, while working for Employer, Employee fell from a fire truck and landed on both knees, injuring them. Employee underwent a left knee replacement at St. Joseph's Hospital in 1996, performed by Dr. David Stronsky (Dr. Stronsky), who was authorized by Employer. The Commission found Employee to be permanently and totally disabled and is-

sued its award under Workers' Compensation Law accordingly.

On July 31, 2000, Employee's right knee gave out and he fell. Respondent called paramedics, who transported Employee to St. Joseph Hospital, the hospital designated by Employer. Respondent testified that Dr. Leonard Fagan (Dr. Fagan), a cardiologist, cleared Employee for surgery, but Dr. Stronsky, the physician Employer appointed to perform the surgery, refused to do it. On August 15, 2000, Employee was transferred to Des Peres Hospital so that his primary physician, Dr. Michael Impey (Dr. Impey), could take over his care. Dr. Gary Farley (Dr. Farley) performed the knee surgery on August 18. Employee was discharged on September 1.

Employee developed a bacterial infection and diarrhea and lost his appetite while at home. On September 8, Employee's counsel phoned Respondent to tell her he had just received the award from the Commission for Employee's surgery. Respondent went to tell Employee, who was in bed, and she found Employee unresponsive. She called the paramedics who took Employee to Des Peres Hospital. He was in a coma. A neurologist determined that Employee was brain dead. The decision was made to withdraw life support on September 17 and Employee was pronounced dead on September 19.

On October 3, 2000, Respondent filed a Suggestion of Death of Employee, alleging that Employee died as a result of complications related to knee surgery. Respondent sought a modification of the award for change of condition due to Employee's death, reimbursement of funeral expenses, survivor benefits and payment of medical bills related to the knee surgery. Employer filed objections to the motion. On Octo-

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

ber 27, 2000, the Commission issued an Order allowing the Suggestion of Death and substituting Respondent as a party, and remanded the claim to the Division of Workers' Compensation (the Division) to conduct an evidentiary hearing on the allegations raised in Respondent's motion and the objections filed. The evidentiary hearing was held on June 13, 2001. On July 19, 2001, the Commission agreed with the findings of the Division and issued its Order Grant[ing] Motion for Change of Condition, finding in favor of Respondent, awarding her $491.19 per week in death benefits; $5,000.00 in funeral expenses; $1,432.12 for Dr. Farley's reduced knee surgery bill; and hospital bills in the amount of $22,107.70. Employer appeals from this Order.

## Standard of Review

■ In this appeal the only questions raised pertain to the factual findings of the Commission. The standard of review for questions of fact requires the reviewing court to examine the record and all reasonable inferences therefrom in the light most favorable to the findings and award of the Commission to determine whether they are supported by competent and substantial evidence. *Sutton v. Vee Jay Cement Contracting Co.,* 37 S.W.3d 803, 807 (Mo. App. E.D.2000). If so, the reviewing court must then determine whether the Commission's findings and award, even though supported by competent and substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence contained in the whole record before the Commission. *Id.* In other words, the Commission's factual findings and resulting award should be set aside on appeal only if they are not supported by competent and substantial evidence or, even if supported by such evidence, if they are clearly contrary to the overwhelming

weight of the evidence. *Id.* Otherwise, we must affirm. *Id.*

■ An appellate court reviewing a finding of the Commission in a workers' compensation case will disregard any evidence that might support a finding different from the Commission's even though the evidence may have been sufficient to support contrary findings. *Cuba v. Jon Thomas Salons, Inc.,* 33 S.W.3d 542, 545 (Mo.App. E.D.2000).

■ The Commission is the sole judge of the weight of the evidence and credibility of the witnesses. *Sanderson v. Porta–Fab Corp.,* 989 S.W.2d 599, 601 (Mo. App. E.D.1999). The Commission has sole discretion to determine the weight to be given expert opinions, and that determination cannot be reviewed by appellate courts. *Id.* We will not disturb the choice of one medical opinion over another by the Commission unless the choice clearly results from an abuse of discretion. *Cuba,* 33 S.W.3d at 547.

■ Additionally, the Commission is not solely dependent upon medical evidence, but its finding is to be made from the whole evidence; testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with or where supported by, some medical evidence. *Ford v. Bi–State Dev. Agency,* 677 S.W.2d 899, 903–904 (Mo.App. E.D.1984).

## Point I

Employer contends that the Commission erroneously awarded bills from Dr. Farley, when there was no substantial evidence that Employer denied care, waived its right to direct care, or that Dr. Farley's

procedure was reasonable in light of Employee's terminal condition.

Section 287.140 provides:

**Employer to provide medical and other services, transportation, artificial devices—duties of health care providers—refusal of treatment, effect—medical evidence—division, commission responsibilities—dispute resolution**

1. In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense. Where the requirements are furnished by a public hospital or other institution, payment therefor shall be made to the proper authorities.

Employer designated St. Joseph's Hospital as the hospital for Employee's treatment, and Dr. Stronsky as the physician to perform Employee's knee surgery. The Commission found that after Employee was taken to St. Joseph's Hospital because his right knee had collapsed, Dr. Stronsky refused to perform the knee surgery on Employee. Dr. Impey and Dr. Farley testified that Employee needed knee surgery, and the Commission found that knee surgery was reasonable treatment for Employee. Respondent testified that no one at St. Joseph's hospital offered to perform the knee surgery, and that Dr. Stronsky never came to see or to talk to her or Employee. The Commission found Respondent's testimony to be credible, and we are not allowed to second guess that finding. *Sanderson,* 989 S.W.2d at 601.

Additionally, Dr. Fagan cleared Employee for surgery from a cardiovascular standpoint, but nothing occurred. Accordingly, Dr. Impey ordered him transferred by ambulance to Des Peres Hospital because of his right knee, and Dr. Farley performed surgery on his knee there.

Employer argues that because Employee had more faith in a family doctor or lacks confidence in Employer's doctor is not enough to impose costs of medical care on Employer. However, the evidence shows that Employer's designated doctor did not perform the surgery on Employee, and thus Employee had to find someone else to do it. The evidence does not show that Employee refused Dr. Stronsky's endeavor to perform the surgery. Employer admits in its brief that Dr. Stronsky had deferred Employee's surgery indefinitely, even though Employee had been cleared for surgery by Dr. Fagan.

■ Based on the foregoing, we find that there was substantial evidence that Employee reasonably needed knee surgery; Employer denied treatment; and Employer waived its right to direct care. Accordingly, Employer's first point on appeal is denied.

### Point II

In its second point, Employer argues that the Commission erred in its award of $22,107.70 in medical bills regarding Employee's hospitalization at St. Joseph Hospital because its finding that the hospitalization was primarily for treatment of Employee's knee is not supported by substantial evidence. Employer maintains that the Commission exceeded its authority because Section 287.120 does not include treatment for conditions unrelated to the accident.

In support of this point, Employer states that the Commission relies upon an

opinion of Dr. Impey that the bills from St. Joseph Hospital were for Employee's knee treatment, and such evidence is not substantial because Dr. Impey concedes he never saw the records or any of the bills to support his opinion.

██ St. Joseph Hospital's admitting diagnosis for Employee states "inability to ambulate." The emergency department record states that Employee's knee gave out and he fell twice. Dr. Impey testified that Employee's hospitalization was for his falls. The trial court found Dr. Impey's testimony to be credible. We find this to be substantial evidence that Employee's hospitalization was the result of his knee and for the purpose of surgery on that knee. The Commission also had before it the itemized bill from St. Joseph's Hospital.

Employer argues that Respondent is obligated to differentiate between related and unrelated medical conditions, such as Employee's congestive heart failure, citing *Lawton v. Jewish Hospital*, 679 S.W.2d 370, 373 (Mo.App. E.D.1984). However, the problem in *Lawton* was that "not a single medical bill was submitted to support Mrs. Lawton's summary of expenses." *Id.* at 374. Such is not the case here. Furthermore, the Commission recognized in its order that "Although [Employee] was treated for congestive heart failure, this treatment was secondary to the treatment for his knee." The Commission found that Employee was primarily hospitalized at St. Joseph Hospital for treatment of his knee and evaluation of his status for knee replacement surgery. Although Employer cites Dr. Mary Case's (Dr. Case) testimony that Employee's treatment at St. Joseph Hospital was primarily for congestive heart failure, our review does not allow us to determine the weight to be given expert opinions in workers' compensation cases, *Sanderson*,

989 S.W.2d at 601, or disturb the choice of one medical opinion over another by the Commission unless the choice clearly results from an abuse of discretion. *Cuba*, 33 S.W.3d at 547. We find the Commission's choice here does not result from an abuse of discretion.

Employer also cites *Sullivan v. Masters Jackson Paving Co.*, 35 S.W.3d 879 (Mo. App. S.D.2001), for the same reason he cites *Lawton*. *Sullivan*, however, is inapplicable to the case at bar, as it involves an appeal from an award that included future treatment for alcoholism, where the evidence tended to show that the employee had a history of alcoholism pre-dating his injury, and the employee-respondent did not submit a brief in response to this point on appeal. *Id.* at 888–889. Employer cites two other cases from other jurisdictions, which we decline to address for that very reason.

For the foregoing reasons, Employer's second point on appeal is denied.

## Point III

In its third point, Employer asserts that the Commission erred in its finding that Employee's February 1996 injury to his knees, and his subsequent knee replacement in August 2000, was a substantial factor in his death on September 19, 2000, and erroneously awarded funeral expenses and survivor benefits as a matter of law because the findings of proximate and legal cause are not supported by substantial evidence and Respondent's intentional act to withhold nutrition and life-supporting medication.

Section 287.140.5 provides that ". . . . If the employee dies as a result of an operation made necessary by the injury, the death shall be deemed to be caused by the injury." In a letter to Respondent's attorney, Dr. Impey stated that Employee's

cause of death was a consequence of surgery he underwent for an injury that he received while working as a safety officer for the City of Des Peres. He also testified that there was a direct temporal relationship and a medical relationship between the knee surgery and the timing of Employee's death. Dr. Case testified that she attributed Employee's death to his knee replacement surgery. When Dr. Farley, who performed the knee surgery on Employee, was questioned as to whether the surgery he performed was a substantial factor in Employee's death, he replied affirmatively that it was.

Based on the foregoing, we find that the Commission's finding that Employee's death was caused by his knee surgery is supported by substantial evidence.

Employer cites *Meintz v. Arthur Morgan Trucking Co.*, 345 Mo. 251, 132 S.W.2d 1010 (1939), for the proposition that the testimony of Drs. Impey, Case and Farley, as to the connection between Employee's injury, surgery and death, is speculative. We disagree. The Court in *Meintz* found that there was no medical evidence that the pneumonia the employee contracted much later after sustaining two arm fractures at work, and died from, was a result of the surgeries the employee had. Here, we have substantial medical testimony that Employee's knee surgery caused his death.

Employer also argues that Respondent's decision to remove life support from her husband of 38 years was an intervening cause of his death. Employer did not make this argument below, and

thus we decline to review it, although it is without merit anyway, as "death" is defined in Section 194.005 as:

194.005. Death, legal definition

For all legal purposes, the occurrence of human death shall be determined in accordance with the usual and customary standards of medical practice, provided that death shall not be determined to have occurred unless the following minimal conditions have been met:

. . . .

(2) When respiration and circulation are artificially maintained, and there is a total and irreversible cessation of all brain function, including the brain stem and that such determination is made by a licensed physician.

Dr. Case testified that Employee fit this second category when life support was removed. Accordingly, Respondent's decision to remove life support from Employee was not an intervening cause of his death.

For the foregoing reasons, Employer's third point on appeal is denied.

### Conclusion

The judgment of the Commission is affirmed.[2]

LAWRENCE G. CRAHAN and
LAWRENCE E. MOONEY, JJ., concur.

---

**2.** Respondent filed a Motion to Dismiss Employer's Brief under Mo. R. Civ. P. 84.19 (2001), which includes a request for sanctions for frivolous appeal. "An appeal is frivolous if it presents no justiciable question and is so readily recognizable as devoid of merit on the face of the record that there is little prospect that it can ever succeed." *Gilleylen v. Surety Foods, Inc.*, 963 S.W.2d 15, 18 (Mo.App. E.D. 1998). An appellate court may impose sanctions to (1) prevent congestion of appellate court dockets with meritless cases, which contribute to delaying resolution of cases with merit and (2) compensate respondents for in-

curring expenses defending judgments against meritless issues. *Id.* Sanctions are imposed with extreme caution to avoid chilling an appeal of even slight, colorable merit. *Id.*

If Employer had not included in its appeal the argument that Employer did not waive its right to direct care, and if Employer's argument that there were varying expert medical opinions as to the causes of and contributions to Employee's death had not had a barely tenable legal significance, we would not hesitate to sanction Appellant for this appeal. However, since Employer's entire appeal was not completely devoid of merit, we must deny Respondent's motion. Despite our having to deny Respondent's motion under the law, we are compelled to point out that we find Employer's argument on page 31 of its Brief, that the "Treatment of a terminal patient is not reasonable," as well as its argument that the decision to "terminally wean [Employee] hastened his death and constituted an intervening causative factor" to be particularly repugnant. These arguments are morally shameful, bordering on the outrageous.