# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 12, 2011 Session

## MCCALL BRISTER v. HCA HEALTH SERVICES OF TENNESSEE, ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 2010-C-86     Barbara N. Haynes, Judge

---

### No. M2010-01996-COA-R3-CV - Filed June 8, 2011

---

This is an appeal from the trial court's grant of a hospital's motion to dismiss for failure to state a claim upon which relief can be granted. The trial court determined that plaintiff's claim sounded in medical malpractice and dismissed plaintiff's claim for failure to comply with the written notice and certificate of good faith requirements of the Tennessee Medical Malpractice Act. Finding that Plaintiff's complaint states claim for ordinary negligence and premises liability, we reverse the trial court and remand the case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P. J. and FRANK G. CLEMENT, JR., J., joined.

Jeffrey Scott Frensley, Nashville, Tennessee, for the appellant, McCall Brister.

Brian D. Cummings and James Charles Sperring, Nashville, Tennessee, for the appellee, HCA Health Services of Tennessee, d/b/a HTI Memorial Hospital Corp., and d/b/a Skyline Medical Center, Madison Campus.

### OPINION

## I. Facts and Procedural History

On January 11, 2009, McCall Brister ("Plaintiff"), a twenty year old woman, was involuntarily committed to Skyline Medical Center ("Skyline") for emergency psychiatric

diagnosis, evaluation, and treatment.[1] While at Syline, Plaintiff alleges that she was sexually assaulted by a male patient.

On January 8, 2010, Plaintiff filed suit against Skyline; paragraph twelve (12) of her complaint alleges the following:

The Defendant, HTI Memorial Hospital Corporation, negligently and carelessly:

(a)     failed to adequately supervise, monitor and protect McCall Brister;
(b)     failed to adequately supervise, and monitor and control the individual who sexually assaulted her;
(c)     accepted residents for care when the facility lacked the necessary resources to care for those individuals and protect other residents;
(d)     placed a male residents [sic] who by the nature of their admission have a history and unpredictable and potentially violent and assaultive behavior in the same area with McCall Brister, a twenty (20) year old vulnerable woman unable to defend herself;
(e)     placed McCall Brister in a room remote from the nurses station such that it was unsupervised; and
(f)     failed to provide sufficient numbers of adequately trained staff at Skyline Medical Center

On February 19, 2010, Skyline answered the complaint denying that the hospital deviated from the standard of care. On April 15, 2010, Skyline filed a Motion to Dismiss pursuant to Tenn. R. Civ. P. 12.02(6). Specifically, Skyline argued that Plaintiff's claim sounded in medical malpractice rather than ordinary negligence and that the claim should be dismissed because Plaintiff failed to comply with the requirements of Tenn. Code Ann. §§ 29-26-121 and 29-26-122 which require pre-suit notice and the filing of a certificate of good faith for claims of medical malpractice.

On May 24, 2010, Plaintiff filed a response in opposition to Skyline's motion to dismiss arguing that her claims constituted general negligence or premises liability and did not require pre-suit notice or the filing of a certificate of good faith. The trial court heard arguments on Skyline's motion on May 28, 2010. Also on May 28, Plaintiff filed a motion to excuse compliance with Tenn. Code Ann. §§ 29-26-121 and 29-26-122, a motion to amend the complaint, and an amended complaint (collectively referred to as "May 28 motions").

---

[1] Allegedly, Plaintiff "presented with acute psychosis in the form of hallucinations and religious fixation" after being diagnosed with Hodgkins' Lymphoma.

On June 14, 2010, the trial court entered an Order granting Skyline's motion to dismiss finding:

> The plaintiffs claims, as contained in paragraph 12 of the Complaint, include claims that involve the monitoring of patients, the supervision of patients, the acceptance / admission of patients, the placement of patients with regard to room assignments, and staffing levels. The Court, and especially based on Conley, finds that these claims constitute "medical malpractice" claims.

The court dismissed the case with prejudice based upon Plaintiff's failure to comply with Tenn. Code Ann. §§ 29-26-121 and 29-26-122.

On July 2, 2010, Plaintiff filed a motion to alter or amend judgment. On August 16, 2010, Skyline filed a response to Plaintiff's May 28 motions. The court held a hearing on August 20, 2010 denying Plaintiff's May 28 motions, finding:

> The plaintiff's request to amend the Complaint to assert a medical malpractice claim is futile because the Court has already ruled that the Plaintiff failed to comply with T.C.A. §§ 29-26-121 and 29-26-122, which required, respectively, that Pre-Suit Notice be provided and that a Certificate of Good Faith be filed with the filing of the claims. Accordingly, allowing an amendment to allow medical malpractice claims in the face of these failures would be futile because these claims would be dismissed via a forthcoming Rule 12 motion. . . .
>
> The Plaintiff failed to demonstrate that "extraordinary cause" exists to excuse the Plaintiff's failure to comply with the Pre-Suit Notice and Certificate of Good Faith requirements . . . .
>
> The Plaintiff failed to demonstrate that (1) there are new facts, (2) there is new law, or (3) that the Court committed a clear error of law or that an injustice exists that must be prevented. . . . [T]he Plaintiff's Motion to Alter or Amend Judgment is not well taken and is DENIED.

Plaintiff timely appealed a raises the following issues for our review:

I.      Whether the trial court erred in holding that the claims asserted by the Plaintiff in her complaint are for medical malpractice.

II.     Whether the trial court erred in denying Plaintiff's motion to alter or amend, amend the complaint and excuse non compliance with statutory

pre suit requirements once it made a determination that the claim was for medical malpractice.

## II. Standard of Review

A motion to dismiss a complaint for failure to state a claim pursuant to Tenn. R. Civ. P. 12.02(6) challenges only the legal sufficiency of the complaint itself, not the strength of the plaintiff's proof. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presume all factual allegations to be true, and give the plaintiff the benefit of all reasonable inferences. *Id.* (citing *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996)); *see also Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854–55 (Tenn. 2010). "It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief." *TIG Ins. Co. and Fairmont Specialty Group v. Titan Underwriting Managers, LLC*, No. M2007-01977-COA0-R3-CV, 2008 WL 4853081, at *1 (Tenn. Ct. App. Nov. 7, 2008) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002)); *see also Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). Making such a determination is a question of law and, therefore, our review of the trial court's determinations is *de novo*, with no presumption of correctness. *Id.*; *see also Frye v. Blue Ridge Neuroscience Ctr., P. C.*, 70 S.W.3d 710, 712–713 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

## III. Discussion

The central issue in this case is whether the Plaintiff's complaint states a cognizable cause of action for ordinary negligence, medical malpractice, or both.[2] It is the responsibility of this Court to ascertain the nature and substance of the claim; the designation given by either the plaintiff or the defendant is not determinative. *See Estate of French v. Stratford House*, 333 S.W.3d 546, 555 (Tenn. 2011).

The distinction between medical malpractice and other forms of negligence is subtle, and there are no rigid analytical lines separating the two causes of action. *Id.* at 555 (citing *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005); *Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 639 (Tenn. 2003)). However, Tennessee has adopted the following standard for distinguishing between an ordinary negligence claim and one based upon medical malpractice:

---

[2] A single complaint may be founded upon both ordinary negligence principles and medical malpractice. *Estate of French v. Stratford House*, 33 S.W.3d 546, 555 (Tenn. 2011).

[W]hen a claim alleges negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional, the medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.

*Estate of French*, 333 S.W.3d at 555 (citing *Gunter*, 121 S.W.3d at 641). In distinguishing between ordinary negligence and medical malpractice, we must determine whether the alleged breach of the duty of care set forth in the complaint "is one that was based upon medical art or science, training or expertise." *Id.* at 556 (citing *Conley v. Life Care Ctrs. of Am., Inc.*, 236 S.W.3d 713, 729–30 (Tenn. Ct. App.2007)). Importantly, "not all cases involving health or medical care qualify as medical malpractice claims . . . ." *Id.* at 556 (internal citations omitted).

With these principles in mind, we turn to the allegations in the Plaintiff's complaint. Plaintiff alleges that Skyline negligently allowed a male patient to come into her room and sexually assault her. She specifically claims that Skyline failed to supervise, monitor, and control its patients, lacked sufficient staff to care for patients, and placed her in a dangerous location in the facility. Skyline contends that Plaintiff's complaint sounds in medical malpractice because her claims "stem from allegations regarding the appropriateness of the medical treatment that the Plaintiff . . . received at Skyline . . . ."

In this case, the trial court determined that Plaintiff's complaint stated a cause of action for medical malpractice and dismissed the claim because the Plaintiff failed to comply with the pre-suit notice and certificate of good faith requirements of the Tennessee Medical Malpractice Act ("TMMA"). *See* Tenn. Code Ann. §§ 29-26-121–122. The TMMA applies to alleged misconduct that involves a matter of medical science or art requiring specialized skills not ordinarily possessed by lay persons. *See Estate of French*, 333 S.W.3d at 557 (citing *Peete v. Shelby County. Health Care Corp.*, 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996)). In making its determination that Plaintiff's claims sounded in medical malpractice, the trial court relied on this Court's opinion in *Conley v. Life Care Centers of America, Inc.*, 236 S.W.3d 713 (Tenn. Ct. App. 2007).

We find that *Conley* is distinguishable from the instant case. In *Conley* , the Plaintiff alleged, *inter alia*, that the defendant nursing home was negligent in admitting, retaining, and failing to discharge a patient who attacked her in the dining area of the nursing home.

Relying in part on Tenn. Comp. R. & Regs. § 1200-8-6-.05(2)[3], this Court held that the nursing home's decision to admit and retain the patient was a medical decision; thus the plaintiff's claim sounded in medical malpractice. *Conley*, 236 S.W.3d at 730–31. Unlike the complaint in *Conely*, the complaint in this case alleges that Skyline was negligent in failing to adequately supervise a dangerous patient and in failing to have adequate staff members to monitor the patients; the Plaintiff did not complain relative to her attacker's admission or retention in the hospital. The analysis in *Conley* was premised on the plaintiff's allegation regarding the propriety of admission and retention of a patient into a nursing facility; the complaint in this case makes no such allegation. *Conley* does not necessitate dismissal of the Plaintiff's claims.

Recently, our Supreme Court has articulated a more nuanced approach to the resolution of questions concerning the TMMA. In *Estate of French v. Stratford House*, 333 S.W.3d 546, 555 (Tenn. 2011), an administratrix of the deceased estate brought a wrongful death suit against a nursing home alleging that the nursing home staff had been negligent in providing care for the resident's pressure sores. The Court determined that the allegations in the plaintiff's complaint could be separated into acts and omissions constituting medical malpractice and acts and omissions constituting ordinary negligence. *Estate of French*, 333 S.W.3d at 558. For example, the Court held that the following claims were based in medical malpractice:

> Claims regarding the "evaluation of how a particular patient needs to be fed or hydrated, whether the patient is at risk for pressure sores, how often an at-risk patient needs to be turned, [and] how to treat pressure ulcers if they develop," as properly categorized by the Court of Appeals, fall under the guise of a medical diagnosis requiring specialized skills and training.

*Id.* However, the Court held other claims to be based in ordinary negligence:

> The Administratix, however, also asserts that the staff at the Stratford House failed to administer basic care in compliance with both the established care plan and doctors' subsequent orders regarding Ms. French's treatment. Moreover, those staff members who allegedly failed to follow the care plan were CNAs. While CNAs are required to receive a course of training that is regulated by the state, they are not medical professionals and their

---

[3] Tenn. Comp. R. & Regs. § 1200-8-6-.05(2) was cited for the proposition that "a physician must personally approve a written recommendation that an individual be admitted to a nursing home and remain under the care of a physician while a resident of a nursing home." *Conley*, 236 S.W.3d at 730 (citing 42 CFR § 483.40; Tenn. Comp. R. & Regs. § 1200-8-6-.05(2)).

qualifications do not approach the more extensive and specialized training of a doctor or registered nurse.[footnote omitted] The Administratrix claims that the failure of the CNAs to provide basic services resulted, at least in part, from chronic understaffing of which senior management at the Stratford House was aware. In our assessment, these alleged acts and omissions pertain to basic care and do not substantially relate to the rendition of medical treatment by a medical professional.

*Id.* at 558–59. Thus, in *Estate of French*, claims related to "basic care," lack of training, and "understaffing" constituted claims of ordinary negligence and were not governed by the TMAA. *Id.* at 558–59.

We have reviewed the allegations in Plaintiff's complaint and find that they do not bear a substantial relationship to the rendition of medical treatment by a medical professional. To the contrary, the complaint speaks of supervision that could be provided by a security guard or some other person who does not have specialized training in medical science or the adoption of other appropriate non-medical safeguards. Moreover, as in *Estate of French*, we find that the claims related to "understaffing" sound in principles of ordinary negligence rather than medical malpractice. Taking the allegations in the complaint as true and giving all reasonable inferences to the Plaintiff, we find that the allegations constitute a claim of ordinary negligence[4] or premises liability[5] and are not governed by the TMAA

---

[4] The elements of negligence are: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Griggers v. Memphis Hous.* Auth., 277 S.W.3d 359, 364 (Tenn. 2009) (citing *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn.1995); *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006)).

[5] For the owner or operator of a premises to be held liable for negligence in allowing a dangerous condition to exist on their premises, the plaintiff must prove the elements of negligence and in addition, that, "1) the condition was caused or created by the owner, operator, or his agent, or 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004) (citing *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)).

## III. Conclusion

Our disposition of the first issue presented for review pretermits our consideration of the second issue.

For the foregoing reasons, the decision of the trial court is reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE