# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 5, 2006 Session

## NICCOLE A. NAIFEH, ET AL. v. VALLEY FORGE LIFE INSURANCE COMPANY, ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Tipton County**
**No. 18813     Dewey C. Whitenton, Chancellor**

---

**No. W2003-02800-SC-R11-CV - Filed on August 28, 2006**

---

We granted this appeal to determine (1) whether a life insurance policy purchased by the insured as part of a divorce decree had been terminated before the insured's death; and (2) whether the insurer or the insurance agent was negligent in failing to prevent the policy from lapsing after the insured issued an oral stop payment order and failed to pay a monthly premium. The Chancery Court concluded that the policy had not been terminated, that the insurer and insurance agent were negligent, and that the proceeds of the policy were to be paid to the beneficiary. The Court of Appeals, reversing the Chancellor's judgment, concluded that the policy had been backdated by agreement of the parties and had been terminated by the insured before his death. The Court of Appeals also concluded that the insurer and the insurance agent were not negligent because their actions were not a proximate cause of the damages. After reviewing the record and applicable authority, we conclude that the life insurance policy remained valid at the time of the insured's death and that the beneficiary was entitled to the proceeds under the policy. However, we agree with the Court of Appeals' conclusion that the insurer and the insurance agent were not negligent because there was no evidence that their acts were a proximate cause of the damages. Accordingly, the Court of Appeals' judgment is affirmed in part and reversed in part for the reasons stated herein.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
### Affirmed in part and Reversed in part

E. RILEY ANDERSON, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

J. Houston Gordon, Covington, Tennessee, for the Appellants, Niccole Naifeh and Henry Joseph Naifeh, Co-Administrators of the Estate of John H. Naifeh.

James S. Wilder, II, Dyersburg, Tennessee, and James J. Webb, Jr., Memphis, Tennessee, for the Appellant, Cathy Naifeh.

Sam B. Blair, Jr., and John B. Starnes, Memphis, Tennessee, for the Appellee, Valley Forge Life Insurance Company.

J. Kimbrough Johnson and John Dotson, Memphis, Tennessee, for the Appellees, Bill McGowan, Jr., and Bill McGowan and Company.

Walker T. Tipton, Covington, Tennessee, for the Appellee, Union Planters Bank.

Charles W. Cook, III, and James E. Gaylord, Nashville, Tennessee, for the Amicus Curiae, Tennessee Bankers Association.

## OPINION

## Background

This appeal involves a one-million dollar life insurance policy purchased by the decedent, John H. Naifeh ("Naifeh"), from Valley Forge Life Insurance Company ("Valley Forge") with the assistance of Bill McGowan ("McGowan"), an independent insurance agent. The policy, which was required under a divorce decree, named Naifeh's former wife, Cathy Naifeh, as sole beneficiary. After Naifeh was killed in a car accident in March of 2000, Valley Forge decided that the policy had been terminated because Naifeh had issued an oral stop payment order on the monthly premiums to Union Planters Bank in January of 2000.

The plaintiffs, Cathy Naifeh and the co-administrators of John Naifeh's estate ("Estate"), filed a complaint in the Chancery Court of Tipton County, Tennessee, alleging several causes of action against the defendants, Valley Forge, McGowan,[1] and Union Planters Bank. In particular, the plaintiffs alleged breach of contract, negligence, bad faith, estoppel, and deceptive practices under the Consumer Protection Act against Valley Forge, and they sought specific enforcement of the life insurance contract. The plaintiffs also alleged negligence, misrepresentation, and violations of the Consumer Protection Act against McGowan. Finally, the Estate brought claims for breach of contract, violations of the Consumer Protection Act, and non-compliance with state and federal banking statutes against Union Planters Bank. Valley Forge filed a cross-claim against McGowan. The evidence presented during a bench trial before the Chancellor is summarized below.

### *Summary of Evidence*

Thomas Forrester ("Forrester") testified that he represented Cathy Naifeh in her divorce from the decedent in 1998. As part of a marital dissolution agreement dated September 16, 1998, Naifeh

---

[1] The complaint was filed against Bill McGowan as an individual and against Bill McGowan & Company as a business. Our opinion will refer to both collectively as McGowan.

agreed to buy a one-million dollar life insurance policy naming Cathy Naifeh sole beneficiary and her son, John Andrew McCullough, as secondary beneficiary. The agreement stated in part:

> Said life insurance shall be maintained for a period of twenty (20) years from the date of execution of this Marital Dissolution Agreement. Husband shall not pledge, borrow against or encumber said insurance policy. Husband is to furnish to Wife the name and address of the insurance company issuing said life insurance policy, the policy number, the group number (if any) and the name and address of the insurance agent through whom the policy was purchased. <u>Husband, by his signature hereto, does hereby release and authorize any insurance company, agent and/or representative who has knowledge or information regarding the status and issuance of said policy to communicate fully with Wife as to said policy and the status thereof in regard to any and all premium payments. Husband, upon Wife's demand, shall exhibit to Wife evidence that said insurance is in full force and effect and that the policy is being maintained per the provisions set forth hereinabove</u>. Husband agrees to execute the necessary documents to have said insurance premiums paid directly from his bank account. If for any reason Husband does not maintain said life insurance as required by this provision or, if for any reason said insurance is not paid to Wife upon Husband's death (or to Wife's son if Wife predeceases Husband), Husband's estate shall be responsible for paying to Wife (or to Wife's son if Wife predeceases Husband) the sum of One Million Dollars ($1,000,000.00).

(Emphasis added).

Forrester testified that the divorce decree incorporating the above agreement was filed on December 10, 1998. Although he thought he sent a copy of the decree to McGowan, he had no record of having done so. Forrester testified that he did not receive a copy of the insurance policy, the name of the insurance company, the policy number, or any other information required in the divorce decree. However, Forrester testified that he learned the policy was in effect after speaking to McGowan shortly before the divorce decree was filed.

Marilyn Balicki ("Balicki"), a representative of Valley Forge, testified that on August 26, 1998, Naifeh obtained a life insurance proposal from Valley Forge through McGowan. The proposal, which listed Naifeh's age as fifty-one,[2] stated in part that "[N]o contract will be issued until an application has been received and accepted by the underwriting company."

---

[2] Naifeh's date of birth was January 27, 1947; thus, he was fifty-one at the time he filled out the application.

On August 31, 1998, McGowan helped Naifeh complete an application for the policy. Naifeh wrote a check in the amount of $149.99, which was a "conditional premium" payment for a "Male Preferred Nonsmoker 2." The conditional coverage provision of the application stated that "insurance coverage will begin on the later of the following dates: A. The Underwriting Date, or B. The Policy Date, if any requested in item 14 of the application." However, there was no date requested in item fourteen. Naifeh provided a "void" check to set up an automatic electronic transfer, and he signed a request for preauthorized payment that was to be sent to Naifeh's bank, the First State Bank ("First State Bank") of Covington.[3] The request form stated that the "authority will remain in force until revoked by [Naifeh] in writing, and until [Bank] actually receives such notice." The form also stated that the authorization could be revoked with Naifeh's "written revocation." Balicki testified, however, that the preauthorized payment form was not sent to the bank because "banks don't want them."

On September 21, 1998, Naifeh completed a medical exam during which he admitted smoking cigars. On November 3, 1998, Naifeh completed an additional questionnaire at Valley Forge's direction stating that he smoked one cigar every two to three weeks. On November 19, 1998, a life insurance policy was approved by Valley Forge's underwriters but with a classification of "nonsmoker class 4," which increased the premium amount to $214.33 for the first year. Although Balicki said that Valley Forge had adopted a new classification for cigar smoking in October of 1998, there was no indication that Naifah had been notified of the new classification during the application process.

On November 23, 1998, the policy was issued. On December 1, 1998, Naifeh wrote a check for $278.67, which covered one monthly premium, as well as the difference between the new premium and the initial premium amount of $149.99.

Balicki testified that the declaration page of the policy listed the "policy date" as July 25, 1998. She stated that although Naifeh was fifty-one years of age when the application was completed, his "save age" or "insurance age" was fifty-two because he was within six months of his next birthday. Thus, she thought that the policy was "backdated" to July 25, 1998,[4] so that Naifeh could pay lower premiums based on the younger age.

Balicki conceded that the terms "save age" and "insurance age" were not defined in the application or the insurance policy. Moreover, she conceded that the phrase "conserve to age 51" had been written on Naifeh's application *after* the application had been completed and signed by Naifeh. Although the policy defined the "policy date" as "the date on which the policy is issued and the insurance coverage becomes effective," Balicki acknowledged that the policy did not define "issued" or "becomes effective."

---

[3] The First State Bank became a branch of Union Planters Bank on February 15, 2000.

[4] July 25, 1998, was six months and two days before Naifeh's fifty-second birthday.

Balicki stated that the life insurance policy was not approved by Valley Forge underwriters until November 19, 1998. She further stated, however, that the proceeds of the policy would have been paid when Naifeh completed a medical examination on September 21, 1998, even though the underwriters had not approved the policy, because Naifeh had paid a "conditional premium" payment with his application. Although the conditional premium receipt stated that a conditional premium was not to be accepted for a policy over $500,000, Balicki testified that the restriction did not apply because Valley Forge had increased the maximum to one million dollars and because McGowan may have used an out-dated form. She conceded, however, that Valley Forge had no records establishing that Naifeh had been given the conditional premium receipt.

Balicki further admitted that Valley Forge had no records indicating that the policy was delivered to Naifeh and that she assumed he had received it only because he started paying the monthly premiums. She agreed that delivery was important for the insured to ratify any new provisions in the policy.

Naifeh began paying premiums for the policy each month. On December 1, 1998, Naifeh wrote a check for $278.67 for one monthly premium of $214.33 plus the difference between the new monthly premium and the "conditional premium" payment he had made. On December 9, 1998, $642.99 was electronically transferred from Naifeh's account at First State Bank to Valley Forge to pay for three monthly premiums. From December of 1998 through June of 1999, on or about the 25th of each month, $214.33 was electronically transferred from Naifeh's bank account to Valley Forge. Likewise, from July to December of 1999, $251.00[5] was transferred each month from Naifeh's bank account to Valley Forge. In sum, Naifeh paid $4,076.30 in premiums through December of 1999.

According to Balicki, a letter was sent to Naifeh on February 3, 2000, stating that a payment was not received for January of 2000 and that the policy would be terminated after a thirty-one day grace period. The policy said:

> 3.23: GRACE PERIOD – After the first premium, a Grace Period of 31 days from the Premium Due Date will be granted for the payment of every premium. Your policy will stay in force during the Grace Period. If the Insured dies during the Grace Period, we will deduct any unpaid premium for the Policy Month in which the Insured dies prior to the payment of any proceeds, as described in section 2.11.
>
> If the Grace Period ends without the payment of any unpaid premium, this policy will terminate as of the Premium Due Date.

---

[5] The premium amount increased at this point because there had been a fifteen percent (15%) discount during the first year of the policy.

Balicki stated that notices were also sent by Valley Forge to the insurance agent, McGowan, on February 14, February 22, February 28, and March 7, 2000. However, the premium was not paid.

On February 26, 2000, Valley Forge sent Naifeh a notice that the policy had been terminated for nonpayment but offering to reinstate the policy if payment were made in the next thirty-one days. Because no payments were made in that time period, the policy was deemed terminated as of January 25, 2000. On March 13, 2000, Naifeh died from injuries he suffered in a car accident.

Gary Dering ("Dering"), the Life Sales Office Manager for Valley Forge in Memphis, testified that the phrase "conserve to age 51" had been written on Naifeh's application by one of Dering's employees. Dering conceded that the phrase had been added after Naifeh had signed the application and that there was no specific indication that Naifeh had approved the additional language. Dering testified that he believed the policy had been backdated to July 25, 1998, to allow Naifeh to pay premiums based on his actual age of fifty-one instead of his insurance age of fifty-two. He conceded, however, that the decision to backdate a policy is left to the insured and that the application signed by Naifeh did not define "insurance age" or "save age."

Cathy Naifeh testified that she and her former husband had known McGowan on a professional and personal basis for over thirty years. She said that they had McGowan in mind when including the life-insurance requirement in the divorce agreement. She testified that McGowan told her that he "would keep [her] posted" about the policy and the premium payments and that she saw McGowan at social functions on a regular basis. McGowan did not tell her that the policy had lapsed, however, until after Naifeh died.

Wayne R. Rasmussen ("Rasmussen") testified as an expert on the plaintiffs' behalf. Rasmussen testified that he has a law degree and over twenty years of experience in the areas of insurance underwriting, claims, and management. He was familiar with the standards of care applicable to life insurance agents and had taught courses to insurance underwriters and adjusters.

Rasmussen testified that McGowan breached a duty of care to John Naifeh by failing to notify him that the premium had not been paid for January of 2000 and that the policy was at risk of termination. Rasmussen said that "the job of an agent . . . is to make sure that the client is personally aware and understands the ramifications of such an action." Although he conceded that it was rare for an agent to owe a duty of care to the beneficiary of a policy, Rasmussen stated that McGowan breached a duty of care to Cathy Naifeh because he was aware the life insurance policy was required under a divorce decree and because he told Cathy Naifeh that he would keep her informed.

Rasmussen testified that the life insurance policy date was November 23, 1998, because that is when the policy was approved by Valley Forge's underwriters and issued to Naifeh. By using this effective date, Rasmussen determined from the total amount of premiums paid by Naifeh from August of 1998 to December of 1999 that the premiums had been paid through May of 2000 and that, therefore, the policy was valid when Naifeh died in March of 2000. Rasmussen believed that

listing a policy date of July 25, 1998, was inconsistent with the definition of "policy date" as stated in the policy and was deceptive. He believed that it was improper to backdate the policy by writing "conserve to age 51" on Naifeh's application because there was no definition of "conserve age" in the application or in the policy and there was no indication that Naifeh was aware of the additional language. Finally, Rasmussen stated that the "conditional premium" paid by Naifeh with the application did not create an effective life insurance policy because the policy was not approved by the Valley Forge underwriters until November 19, 1998.

Jerry Dupriest ("Dupriest") testified that he was the President and CEO of First State Bank in January of 2000 and that he met with John Naifeh on January 10, 2000. Naifeh, who was a long-time customer, told Dupriest to stop the electronic payment of his life insurance premium through his business checking account because he wanted to "start paying it directly on a personal basis." Dupriest told Naifeh to speak with another employee, Vicky Atkins ("Atkins").

Dupriest admitted that oral stop payment orders were only binding for fourteen days unless confirmed in writing. He did not require Naifeh to confirm the stop payment order in writing. In addition, he testified that he did not receive a form from Valley Forge indicating that the authority for automatic payments "will remain in force until revoked by [Naifeh] and until you actually receive such notice." Finally, Dupriest admitted that after Naifeh's death, the following record as to Naifeh's stop payment order was created and added to Naifeh's file: "Internal record of our file to keep in same file as stop payment on check: Did not require customer to sign electronic request."

Atkins testified that on January 10, 2000, she received a stop payment order to cancel the payment of $251.00 due to Valley Forge. Because the stop payment order was made by telephone, Atkins did not know for certain that Naifeh was the person placing the order. However, Atkins verified the order by checking the amount of the electronic transfer for which cancellation was requested, the name of the payee on the transfer, the social security number of the account holder, and the date of the account's last deposit. Atkins stated that First State Bank had a policy of requesting signatures of parties requesting a stop payment order, but that it was common to keep the stop payment order in place even without a signature for a period of six months. She never received a written stop payment order from Naifeh.

Randall Mire ("Mire"), an actuary in the life insurance industry, testified as an expert witness for the defense. He testified that "insurance age" means an insured's age at his or her "nearest birthday" and that backdating for up to six months was a "majority practice" in most states, allowing the insured to pay premiums based on a lower age. Mire testified that there is nothing deceptive about backdating and that, although the insured must pay premiums for months in which the coverage was not in effect, the insured saves money by paying lower premiums over the length of the policy. Although Valley Forge's policy did not define "save age" or "insurance age," Mire noted that it defined "policy age" as "the insured's age on his birthday nearest the date on which [the] policy is issued."

Mire testified that Naifeh's insurance age was fifty-two. Mire testified that in his opinion, the policy had been backdated to July 25, 1998, to allow Naifeh to pay premiums based on age fifty-one. Although Mire acknowledged that the policy defined the "policy date" as "the date on which the policy is issued and the insurance coverage becomes effective," he stated that the policy date was listed as July 25, 1998, and that there was no reason to use any other date as the policy date. In addition, Mire stated that the policy was effective on September 21, 1998, because Naifeh had paid a conditional premium payment under which coverage became effective "on the later of the following dates: The underwriting date or the policy date, if any, requested in item 14 . . . ." Mire noted that the policy defined the underwriting date as "the later of the following dates: The date of the application or the date on which all the medical requirements specified by the company's rules and standards are completed." In Mire's opinion, the Valley Forge underwriters simply increased the classification and did not create a new policy date when approving the policy on November 19, 1998.

Similarly, Kimbrough Taylor ("Taylor"), testifying for the defendants, stated that he had worked as an insurance agent for New York Life for almost fifteen years. He testified that Naifeh's insurance age was fifty-two at the time he completed the application for life insurance with McGowan. He stated that in his opinion, the policy date was the date the premiums were due and the coverage began and that the policy dated in this case was July 25, 1998. Taylor testified that it is common for insurance company personnel to write on the application to help in the processing and underwriting process; in his opinion, "conserve to age fifty-one" had been written on Naifeh's application for this purpose and was not improper. He stated that backdating a policy is common and that doing so in this case allowed Naifeh to pay premiums based on a younger age. Taylor concluded that he reviewed the application and the policy and that he saw nothing that Valley Forge or McGowan did wrong.

McGowan testified that he was president of Bill McGowan & Company and that he had worked in the insurance industry for over twenty-five years. He knew John and Cathy Naifeh on a personal and professional basis. In August of 1998, he obtained a proposal for life insurance for John Naifeh based on Naifeh's age of fifty-one and as a "nonsmoker class 2." McGowan told Naifeh that they "would have to make it effective in July to get the age 51 and for him to save about $250 or $300 the first year," and Naifeh replied, "That's great." McGowan helped Naifeh complete the application for the policy and gave Naifeh a conditional payment receipt in return for the initial monthly premium. McGowan sent the application and Naifeh's check to Dering on August 31, 1998.

According to McGowan, Valley Forge requested additional information based on Naifeh's use of cigars. On December 1, 1998, he met with Naifeh to "get the form signed and to answer those few health questions and collect the extra money." Naifeh wrote a check for $278.67, which included the increased premium and the difference between the new premium and the payment made with the application. McGowan testified that the policy was approved as nonsmoker class 4; he had "no doubt" that he delivered the policy to Naifeh and stated that he "probably" mailed it. In June of 1999, Valley Forge sent a letter informing Naifeh that his discounted premium for the first year

was about to expire and that the monthly premium would increase. Naifeh did not call or write McGowan to inquire about this increase.

McGowan received a letter from Valley Forge dated February 3, 2000, which indicated that the payment had not been made for January 25, 2000, because a stop payment order had been made on the account. After receiving additional notices from Valley Forge about Naifeh's policy, McGowan wrote to Naifeh on February 18, 2000, even though he was not required to do so as the agent. Naifeh did not respond. After Naifeh was killed, Cathy Naifeh called to ask about the policy. McGowan contacted Dering and Valley Forge and learned that the policy had been terminated before Naifeh's death and that no proceeds were due.

McGowan said that Cathy Naifeh was a beneficiary but not an owner of the life insurance policy and that he was never asked to provide information about the policy to her attorney. He did not receive a copy of the Naifehs' divorce decree. McGowan testified that he did not tell Cathy Naifeh he would keep her posted about the premium payments or the potential lapse of the policy. He told her that she had nothing to worry about as long as the premiums were paid but that he was not permitted to tell her "about anything."

*Chancellor's Rulings*

After hearing the proof and taking the matter under advisement, the Chancellor determined that Valley Forge was obligated to pay the proceeds of the life insurance policy to Cathy Naifeh. The Chancellor found that "after John H. Naifeh signed the application forms . . . and after McGowan mailed these documents to Valley Forge Life Insurance Company's Memphis office, an employee in that office interlineated the words, 'Date to conserve age 51 in . . . the application." The Chancellor further found, however, that "there is not sufficient evidence to show that John H. Naifeh ever signed, initialed or did anything else to indicate he was aware of or approved the change." The court noted that although changes may be ratified when the policy is delivered, McGowan had "no records showing that he ever received the policy from CNA/Valley Forge . . ., nor does he have any record showing he ever mailed the policy to [Naifeh]."

In addition, the Chancellor found that the application completed by Naifeh in August of 1998 was never accepted by Valley Forge, that the life insurance policy was issued on November 23, 1998, with a new classification and a new premium, and that, contrary to McGowan's testimony, Naifeh never received a copy of the policy.[6] The Chancellor explained:

> The court finds by a preponderance of the credible evidence, that
> John H. Naifeh never actually received the policy. There is nothing
> on the Valley Forge Life Insurance Invoice dated November 23, 1998,

---

[6] In particular, the Chancellor noted that Valley Forge lacked any record indicating that the policy had been delivered and that while McGowan testified that he "believed" he mailed the policy to Naifeh, he had no transmittal letter or other corroborating evidence.

[which] instruct[ed] Mr. McGowan to obtain the increased premium[,] to indicate that the policy was delivered with it. Valley Forge Life Insurance Company's computer system does not show a policy delivery date and the policy delivery receipt was not checked. On . . . the CNA/ Valley Forge Life Insurance Company screen printout, where the date of delivery was to be filled in, the date of delivery is not shown. There is nothing in Valley Forge Life Insurance Company's file to indicate that a policy was ever mailed or that John H. Naifeh ever received it.

Moreover, after finding that the "policy date" was ambiguous, the Chancellor determined that the life insurance policy became effective on December 1, 1998; at that point, Valley Forge had completed its underwriting, Naifeh had been reclassified as a "nonsmoker class 4," and Naifeh had paid the first premium. As a result, the Chancellor found that Naifeh's total payments extended life insurance coverage beyond Naifeh's death on March 13, 2000, and that Valley Forge was obligated to pay $1,000,000.00 to Cathy Naifeh (plus pre-judgment interest of 8% per annum beginning on June 1, 2000).

The Chancellor also determined that Valley Forge and McGowan were liable to Cathy Naifeh for negligence. In particular, the Chancellor found that McGowan told Cathy Naifeh that he would "keep [her] posted about the policy" but failed to tell her that the premium was not paid in January of 2000. In addition, the Chancellor determined that Valley Forge and McGowan failed to send Naifeh's preauthorization form, which stated that he could revoke his authorization for payments in writing, to First State Bank.

The Chancellor dismissed the claim brought by Cathy Naifeh and Naifeh's estate against McGowan for negligent misrepresentation after determining that McGowan's statement to keep Cathy Naifeh "posted" was one of future intent and not a basis for negligent misrepresentation. Finally, the Chancery Court dismissed the claims against Union Planters Bank and Valley Forge for its handling of the oral stop payment order, dismissed all claims against Union Planters Bank and Valley Forge under the Consumer Protection Act, and dismissed all remaining actions against Union Planters Bank.

*Court of Appeals' Ruling*

The Court of Appeals reversed the Chancellor's judgment after concluding that the life insurance policy had been terminated before Naifeh's death and that Cathy Naifeh was not entitled to recover the proceeds. The court concluded that the policy had been backdated to July 25, 1998, to allow Naifeh to pay premiums for age fifty-one, notwithstanding his insurance age of fifty-two. The court emphasized that Naifeh paid premiums for the period of July through November of 1998 and that McGowan had testified that Naifeh agreed to backdate the policy.

The Court of Appeals also reversed the Chancellor's ruling that Valley Forge was either negligent or liable for the negligent acts of its agent, Bill McGowan. The court bypassed the issue of whether McGowan had a duty to Cathy Naifeh, however, and concluded that there was no evidence of proximate cause. Finally, the Court of Appeals upheld the Chancellor's denial of relief as to the remaining claims. We granted review.

## **Analysis**

### *Policy Date*

The key issue is whether Naifeh's life insurance policy had been terminated at the time of his death. We will begin by summarizing the parties' arguments.

The plaintiffs, Cathy Naifeh and the Estate, argue that the trial court correctly found that the policy date was ambiguous. Although the policy listed the policy date as July 25, 1998, the policy was not approved by Valley Forge until November 19, 1998, and was not issued until November 23, 1998. Moreover, Naifeh did not pay a premium for the policy as approved by Valley Forge until December 1, 1998. As a result, the plaintiffs argue that the trial court correctly determined that there was no evidence of Naifeh's intent to backdate the policy, that the policy date was December 1, 1998, and that the total amount of premiums paid by Naifeh from August of 1998 to December of 1999, ($4,076.30), made the policy valid at the time of Naifeh's death in March of 2000.

In contrast, the defendants, Valley Forge and Bill McGowan, argue that the Court of Appeals correctly determined that the policy date was July 25, 1998, and that the policy had been backdated for Naifeh to pay premiums for the age of fifty-one. They argue that the policy lapsed when Naifeh failed to pay the premium for January of 2000 and failed to take any action to preserve or reinstate the policy within the applicable grace period.

In interpreting an insurance contract, we must determine the intention of the parties and give effect to that intention. Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005); Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975). An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning. Parker v. Provident Life & Acc. Ins. Co., 582 S.W.2d 380, 383 (Tenn. 1979). When there is doubt or ambiguity as to its meaning, an insurance contract must be construed favorably to provide coverage to the insured. Christenberry, 160 S.W.3d at 494. However, the contract may not be rewritten by the Court. Id.; see also Tenn. Farmers Mut. Ins. Co. v. Witt, 857 S.W.2d 26, 32 (Tenn. 1993).

It is well-established that an insurance policy may be backdated by agreement of the parties. Couch on Insurance 3d § 69:44; see also Berry v. Prudential Ins. Co. of Am., 134 S.W.2d 886, 891 (Tenn. Ct. App. 1939). Likewise, Tennessee Code Annotated section 56-7-2308(3) permits backdating of a life insurance policy as long as a policy is not backdated more than six months prior to the application for life insurance.

Ambiguities may arise, however, where backdating appears to conflict with the effective date defined in an insurance policy.   As one commentator has said:

> The contention that the later date should control is based upon the argument that the provisions as to effective date raise an ambiguity which should be resolved in favor of the insured.  In determining whether such an ambiguity exists, the courts have, of course, considered the widely varying phraseology of the particular contracts with which they have been confronted . . . . [I]n a large majority of the cases where the question has been considered, it has been held that the date stipulated in the policy as that from which premiums are to be calculated must be given effect, notwithstanding the provision that the coverage was not actually in force until a later date . . . .

W.E. Shipley, Annotation, Effective Date of Life, Health, or Accident Insurance Policy as Between Premium Date Stated in Policy and Later Date of Approval, Acceptance, or Delivery of Policy On Payment of Premiums, 44 A.L.R. 2d 472 § 2 (1955) (emphasis added).  In addressing such issues,

> [i]t has frequently been recognized that the claimant is not in [a] position to contend that the policy is ambiguous where the insured has demonstrated by his own conduct that he consciously accepted the date stated in the policy as controlling for premium payment purposes, and such acts of the insured as payment of subsequent premiums on that date, or applications for reinstatement after failing to make such payments, have frequently been relied upon to evidence such a practical construction of the contract by the parties.  . . .
>
> It is clear that where the insured expressly requests that the policy be predated, realizing that he is thus paying premiums for a period during which he is not protected, and receiving a quid pro quo for such payments, such as a reduced age for premium rate purposes, no inequity is involved and there is no ambiguity arising from the situation.

Id. (emphasis added).

In Berry, the Court of Appeals noted that "[t]here is no reason why parties cannot agree that a policy may be antedated, and that the policy shall take effect from said date agreed upon, for a policy of insurance is a voluntary contract."  134 S.W.2d at 891 (quoting Whitney v. Union Cent. Life Ins. Co., 47 F.2d 861, 864 (8th Cir. 1930)).   In that case, a life insurance policy was issued to the decedent, naming the decedent's wife as beneficiary.  The policy, which had a date of issuance of May 13, 1935 and called for quarterly premium payments, stated that it was not effective until the first premium was paid and the policy was delivered to the insured on June 15, 1935.  When the

decedent failed to pay the first quarterly premium due on August 13, 1935, the policy lapsed thirty days later. Id. at 887-88. The decedent was approved for reinstatement on October 29, 1935, failed to pay the premium for November 13, 1935, and died on December 19, 1935. The decedent's wife argued that the policy had not lapsed because it was not delivered to the decedent until June 15, 1935, and because the decedent was within the grace period when he died.

In holding that the date of the policy, and not the date of delivery, determined when future premiums were due, the court noted that the evidence established that the parties had agreed to an issuance date of May 13, 1935, that the first quarterly premium was due on August 13, 1935, and that the policy had lapsed before the decedent's death. Id. at 892. The court explained:

> Nor do we see any ambiguity in the language used in the policy for the due date of premium payments. The language is clear, definite, and free from any confusion, and the policy fixes the date for the payment of premiums in no uncertain language, and was accepted by the insured. It is evident from the record that the insured well understood the due dates for the payment of premiums.

Id.

In the present case, there is evidence that the policy was backdated to July 25, 1998. If the policy had been properly backdated, it would have allowed Naifeh to pay premiums based on age fifty-one, even though his "insurance age" was fifty-two when he completed the application; as a result, Naifeh would have saved approximately eleven percent ($300) per year in premiums. Similarly, July 25, 1998 is six months and two days before Naifeh's fifty-second birthday (January 27, 1999), i.e., his "insurance age." In addition, the fact that the premium paid by Naifeh in June 1999 was the last premium payment reduced by the fifteen percent discount for the first year indicates that the first year began in July of 1998. Similarly, the "expiry date," which was defined in the policy as "the date coverage under this policy ends," was listed as July 25, 2042.

This does not, however, end our inquiry. In considering and applying all of the provisions in the policy, it bears emphasis that there is no language or provision stating that the policy was backdated by the agreement of the insurer and the insured. As the Chancellor found, "there is no reference to 'insurance [a]ge' or 'backdating' to 'save age' in the policy." Moreover, although the policy defines "policy age," the trial court found "that there is nothing in the policy, the proposal, or the application that the 'Age 51' used was anything other than chronological age." The Chancellor found that the phrase "conserve to age 51" was written on the application after Naifeh had signed the application, that nothing in the application or the policy established that Naifeh intended to backdate the policy, and that there was no evidence that Naifeh specifically approved or ratified the backdated policy date. Indeed, while McGowan said that he had a conversation with Naifeh about backdating the policy, the Chancellor implicitly rejected this testimony given the lack of any corroborating evidence.

Second, the stated policy date of July 25, 1998, conflicts with the provisions in the policy that defines "policy date" as "the date on which the policy is issued and the insurance coverage becomes effective." Although the policy did not define "issued" or "becomes effective," there is no serious contention that the policy was issued to Naifeh or became effective on July 25, 1998. To the contrary, the evidence establishes that the policy was not approved by Valley Forge's underwriters until November 19, 1998, and was not issued until November 23, 1998. Moreover, the Chancellor found that Naifeh never approved or ratified the changes because there was no evidence that the policy, which differed in classification and premium rates, was delivered to Naifeh.

Third, the defendants' argument, and the Court of Appeals' reasoning, were largely based on the premise that the policy was backdated so that Naifeh could save money by paying premiums based on age fifty-one. While this is one fair inference, it is not unambiguously supported by the policy. Indeed, the Chancellor observed that "Valley Forge Life Insurance Company could have provided the applicant with a reduced premium for any number of reasons" and that the policy stated only that "the Company may charge less than the premium shown . . . ."

In short, whether an insurance policy has been backdated is largely a question of intent, which itself is a question of fact. See Murfreesboro Med. Clinic, P.A. v. Udom, 166 S.W.3d 674, 678 (Tenn. 2005). Although the Chancellor considered the documentary evidence and the testimony of the witnesses and found that the evidence did not establish Naifeh's intent to backdate the policy, the Court of Appeals did not extend any deference to this finding. See Tenn. R. App. P. 13(d). In contrast, we believe that the evidence did not show that Naifeh "consciously accepted" or "expressly request[ed]" that the policy be backdated; accordingly, the evidence in the record does not preponderate against the trial court's finding.

In reaching this conclusion, we also find that the Court of Appeals' reliance on Berry is misplaced. In Berry, there was no question that the insured and the insurer agreed on the issuance date stated in the policy as well as the monthly dates for premium payments. The policy was delivered to the insured and, in the words, of the court, had language that was "clear, definite, and free from any confusion." In contrast, the present case involves a policy application with a date of July 25, 1998, and a policy that was issued on November 23, 1998, with a different classification and new premium payment amount. Moreover, the Chancellor specifically found that this policy was not delivered to Naifeh. When coupled with the policy's lack of clarity in defining its effective date or the backdating of the policy, we are unwilling to conclude that this case is identical to or controlled by Berry.

In addition, we agree with the Chancellor that the insurance policy was ambiguous and susceptible to different meanings under the facts of this case. See Christenberry, 160 S.W.3d at 494; Am. Justice Ins. v. Hutchison, 15 S.W.3d 811, 815 (Tenn. 2000). Our cases have regularly held that ambiguous provisions must be resolved against the insurer who drafted them and in favor of providing coverage to the insured. As this Court has said:

> It is a general principle, pervading the law of all forms of insurance, that policies shall be liberally construed in favor of the insured. [C]ourts do not shut their eyes to realities; they know that the policy is a contract of "adhesion," i.e. not one which the parties have reached by mutual negotiation and concession, not one which truly expresses any agreement at which they have arrived, but one which has been fixed by the insurer and to which the insured must adhere, if he chooses to have insurance.

Alcazar v. Hayes, 982 S.W.2d 845, 851-52 (Tenn. 1998) (quoting Brandt v. Mut. Ben. Health & Acc. Assoc., 202 S.W.2d 827, 831 (Tenn. Ct. App. 1947)).

Accordingly, we agree with the Chancellor that the total premiums paid by Naifeh established that the policy was in effect at the time of Naifeh's death. We therefore reverse the Court of Appeals' judgment and reinstate the Chancellor's judgment on this issue.

*Negligence of Insurer and Insurance Agent*

The plaintiffs argue that the trial court correctly concluded that Valley Forge and McGowan were negligent in (1) failing to notify Cathy Naifeh that Naifeh failed to pay the January 2000 premium and (2) failing to provide Naifeh's preauthorization of payment form, which stated that Naifeh's authorization may be revoked in writing, to his bank. The defendants argue that they were not negligent, that McGowan did not owe a duty of care to the beneficiary of the policy, and that the Court of Appeals correctly held that there was no evidence of proximate cause.

The Chancellor found that Valley Forge was liable for the actions of its agent, McGowan, and that McGowan "personally assured Cathy Naifeh that he would keep her informed if any problem occurred relating to the policy and the payment of premiums." The court further concluded that when McGowan received notice that a premium had not been paid, "it triggered the duty [he had] assumed and undertaken to contact Cathy Naifeh and advise her of that fact . . . ." Similarly, the Chancery Court concluded that Valley Forge and McGowan "were negligent in failing to properly handle [the] policy when the authorization of Mr. Naifeh was not sent to First State Bank." The court ruled that because of the defendants' negligence in this regard, "the form did not achieve its purpose and the electronic funds transfer was stopped on the basis of an 'oral' stop payment telephone call."

The Court of Appeals did not rule on whether Valley Forge was responsible for McGowan's actions or whether McGowan owed a duty to Cathy Naifeh. Instead, the Court of Appeals determined that the plaintiffs failed to establish proximate cause because there was no evidence that informing Cathy Naifeh of the missed premium payment or sending the payment authorization form would have prevented Naifeh from terminating the policy.

We have frequently said that a negligence action requires evidence proving the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) defendant's breach of that duty; (3) injury; (4) causation in fact; and (5) proximate, or legal, cause. Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). The element of proximate causation requires that the defendant's conduct must have been a "substantial factor" in bringing about the harm being complained of, that there is no statute or policy that relieves the defendant from liability, and that the harm giving rise to the action was reasonably foreseeable by a person of ordinary intelligence and prudence. McClenahan v. Cooley, 806 S.W.2d 767, 775 (Tenn. 1991).

In holding that proximate cause was not established in this case, the Court of Appeals reasoned as follows:

> [G]iven that the premium was not paid because of the affirmative act of cancelling the electronic transfer and that the policy lapsed because of Naifeh's failure to pay the past due premium within the grace period, we cannot say that McGowan's and Valley Forge's failure to notify Cathy, who was a beneficiary of the policy, was a "substantial factor" in bringing about the lapse of the insurance policy. The effect of giving notice to Cathy that Naifeh failed to pay the premium due on January 25, 2000, is speculative at best, and there is no evidence to suggest, as the trial court states, that "[b]y failing to notify Cathy Naifeh as promised, the policy in this case was determined to have 'lapsed' by the insurance company, resulting in Cathy Naifeh not receiving the $1,000,000.00 proceeds from the policy."

Similarly, the Court of Appeals stated that "the failure to send the [preauthorization] form to First State Bank does not appear to be a 'substantial factor' and is too attenuated to constitute proximate cause in this case."

We agree with the Court of Appeals' analysis. Even had we reached a different decision as to the first issue in this appeal and agreed that the policy was terminated in January of 2000, we would find no evidence of proximate cause. Failing to inform Cathy Naifeh about the missed January 2000 premium payment and failing to send the preauthorization form to First State Bank were not substantial factors in causing the policy to lapse. Indeed, the lapse was the result of Naifeh issuing a stop payment order and the bank accepting the oral stop payment in accordance with its procedures. As a result of our holding on this element, we need not discuss duty of care or any other elements of the negligence action.

**Conclusion**

After reviewing the record and applicable authority, we conclude that the life insurance policy remained valid at the time of the insured's death and that the beneficiary was entitled to the proceeds under the policy. However, we agree with the Court of Appeals' conclusion that the insurer

and the insurance agent were not liable for negligence because there was no evidence that their acts were the proximate cause of the damages. We further agree and affirm the Court of Appeals' decision as to the remaining issues addressed by that court. Accordingly, the Court of Appeals' judgment is affirmed in part and reversed in part for the reasons stated herein. Costs are assessed to the defendants-appellees, and their sureties, for which execution shall issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE