IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 13, 2008 Session

## SAMEH AKLADYOUS, ET AL. v. GTECH CORPORATION, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 06C-402, Barbara Haynes**

**No. M2008-00665-COA-R3-CV - Filed March 31, 2009**

This is an appeal from the granting of a summary judgment to Gtech Corporation and Specialized Communications Companies, Inc., relating to the installation of a satellite antenna on the roof of A&S Market located in Davidson County, Tennessee. The market burned and the owners brought suit alleging that the negligent installation of the satellite antenna caused the fire. The trial court granted summary judgment on the ground the negligence alleged by the market owners was not the legal cause of the fire. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

DONALD P. HARRIS, SR.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J. and RICHARD H. DINKINS, J., joined.

G. Kline Preston, Nashville, Tennessee, for the appellants, Sameh Akladyous and Ashraf Roufail.

William B. Jakes,III, and Hugh C. Gracey, III, Nashville, Tennessee, for the appellee, Gtech Corporation.

Tom Corts, Nashville, Tennessee, for the appellee, Specialized Communications Companies, Inc.

### OPINION

This case involves a claim for damages caused by a fire which occurred on June 1, 2005, at the A & S Market located at 660 Old Hickory Boulevard in Davidson County, Tennessee. In June 2004, a satellite dish for the Tennessee lottery was installed on the roof of the market by Specialized Communications Companies, Inc. (SCC). The satellite system was owned by Gtech Corporation (Gtech). The fire was ignited when the metal roof of the market became electrified causing an arc at the point where the ground wire leading from the satellite receiver touched the metal roof. The arc ignited the fire that destroyed the market.

The facts relating to the cause of the fire are generally not in dispute. In November 2004, the owners of the market, Sameh Akladyous and Ashraf Roufail, hired Shoke Gahtes, who they knew

through their church, to install a series of parking lot lights along the front of the roof of the market. These lights were powered by using an electrical service line that ran to a sign located in front of the market. The line was rerouted through a flexible metal conduit that was strung along the roof. It ran to the newly installed lights and ultimately was connected to the sign that it had initially powered. When the insulation wore off a "hot" electrical wire leading into the sign, the sign became electrified and along with it the flexible metal conduit that had been installed with the parking lot lights. The flexible metal conduit touched the sign and was laying on the metal roof of the store. The metal roof, itself, became electrified. The satellite dish, located on the metal roof, was installed directly on the roof. An uninsulated ground wire attached to the satellite had been routed beneath the metal frame of the satellite dish so that it came into contact with the metal roof. The electrification of the metal roof caused the ground wire to arc at the point where it came into contact with the roof. This arcing was the source of the fire that destroyed the market.

Suit was brought by Mr. Akladyous and Mr. Roufail against SCC, Gtech, and the Tennessee Education Lottery Corporation[1] for damages sustained as a result of the fire. The complaint, as amended, alleges the satellite dish was not installed on "non-petroleum based roof pads" as described in correspondence to them from the Tennessee Education Lottery Corporation, dated June 11, 2004. The failure to install the satellite dish in accordance with the manner described and the failure to take other safety precautions such as using insulated grounding wire was, according to the complaint, a violation of the standard of care owed by SCC and Gtech to the owners of the market and was the proximate or legal cause of the damages sustained by them.

SCC and Gtech filed motions for summary judgment on the ground that the electrification of the metal roof was the sole legal cause of the fire and not any negligence of these defendants. Their position appears to have been based upon the premise that electrification of the metal roof was caused by violations of the National Electric Code in connection with the installation of the parking lot lights.[2] The trial court granted the motions for summary judgment filed by SCC and Gtech on the ground that the "alleged negligent actions on the part of Defendants were not the legal cause of any damages to the Plaintiffs." The plaintiffs, Mr. Akladyous and Mr. Roufail, have appealed from that judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Penley v. Honda Motor Co., 31 S.W.3d 181, 183 (Tenn. 2000); Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993). Since our inquiry involves purely a question of law, no

---

[1] A voluntary non-suit was taken as to the Tennessee Education Lottery Corporation on May 23, 2006, and that corporation is not a party to this appeal.

[2] Both parties filed "bare bones" motions for summary judgment. While there is a reference to a Memorandum of Law being filed by both SCC and Gtech, these memoranda were not included in the record on appeal.

presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. Penley, 31 S.W.3d at 183; Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 88 (Tenn. 2000); Seavers v. Methodist Med. Ctr., 9 S.W.3d 86, 90-91 (Tenn. 1999). Courts should "grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion." Staples, 15 S.W.3d at 89; Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). In reviewing the record to determine whether summary judgment requirements have been met, we must view all the evidence in the light most favorable to the non-moving party. Penley, 31 S.W.3d at 183; Eyring v. Fort Sanders Parkwest Med. Ctr., 991 S.W.2d 230, 236 (Tenn. 1999); Byrd, 847 S.W.2d at 210-11.

Summary judgment proceedings are clearly not designed to serve as a substitute for the trial of genuine and material factual matters. Byrd, 847 S.W.2d at 210; see also Blocker v. Regional Med. Ctr, 722 S.W.2d 660, 663 (Tenn. 1987). The trial court should overrule the motion where a genuine dispute exists as to any material fact. Byrd, 847 S.W.2d at 211. A fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed. Id.

### III. ANALYSIS

It should be noted at the outset that this case was decided by the trial court and briefed before this Court prior to Tennessee Supreme Court's decision in Hannan v. Alltel Publishing Co. 270 S.W.3d 1 (Tenn. 2008). In Hannan, the Court clarified the law related to the granting of motions for summary judgment by holding a party is entitled to summary judgment only when the moving party has negated an essential element of the nonmoving party's claim or has shown that the nonmoving party cannot establish an essential element of the claim at trial. Id. at 6-7. A party is not entitled to summary judgement by merely demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. Id.

With that standard in mind, we review the record in the case before us. As our courts have frequently said, a negligence action requires evidence proving the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) defendant's breach of that duty; (3) injury; (4) causation in fact; and (5) proximate or legal cause. Naifeh v. Valley Forge Life Ins. Co., 204 S.W.3d 758, 771(Tenn. 2006); Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). The element of legal causation requires that the defendant's conduct must have been a "substantial factor" in bringing about the harm being complained of, that there is no statute or policy that relieves the defendant from liability, and that the harm giving rise to the action was reasonably foreseeable by a person of ordinary intelligence and prudence. Naifeh, 204 S.W.3d at 771; McClenahan v. Cooley, 806 S.W.2d 767, 775 (Tenn. 1991).

It is not disputed that the manner of installation of the satellite system was a cause in fact of the fire for which a claim is made. The trial court found the alleged negligence of SCC and Gtech was not the legal cause of the fire, but failed to state a basis for this finding. Thus, the trial court may have found that there was no genuine issue as to whether the alleged negligence was a

"substantial factor" in bringing about the harm or that electrification of the roof was not reasonably foreseeable. The holding in Hannan prohibits the trial court from granting a summary judgment on the basis the proof was insufficient to establish one of these elements. If the defendants failed to negate these elements or establish that the plaintiffs could not prove them at trial, then the trial court must have found that there was some policy that relieved the defendants of liability.

The deposition of Thomas Eaton was filed with the court. Mr. Eaton is a licensed electrical engineer who was employed by Messrs. Akladyous and Roufail to investigate the fire. He testified that the point of ignition of the fire was where the ground wire from the satellite antenna touched the metal roof and arced when the roof became electrified. According to Mr. Eaton, had the ground wire been bonded to the metal roof at the point where it came into contact, the arc and, thus, the fire, would not have occurred. While he testified that it would not have been practical to bond the ground wire to the roof, he also testified that generally an electrician does not want an uninsulated grounding conductor to touch anything to which it is not bonded. According to Mr. Eaton, running the grounding wire from the grounding clamp on the antenna underneath the frame supporting the antenna where it came into contact with the metal roof not only violated this philosophy but was in violation of the National Electric Code. The Code requires the ground wire to go from the grounding clamp to the service mast by the most direct route.

Mr. Eaton testified that the circuit which powered the lights on the roof and the sign was not continuously grounded from the roof area back to the electrical service panel for the store. The absence of continuous grounding was a violation of the National Electric Code and the fire would not have occurred had there been continuous grounding. Mr. Eaton also stated that the circuit was equipped with a 30 amp circuit breaker. In his opinion, the breaker was too big for the circuit and should have been a 15 or 20 amp circuit breaker. He suspected, however, that a properly sized circuit breaker would not have tripped under the circumstances. The arcing at the point where the ground wire came into contact with the metal roof would probably have created enough resistance to prevent the circuit from overloading.

Mr. Eaton testified that there were other ways the roof could have become electrified than the manner in which it did. According to Mr. Eaton the roof may also have become electrified by lightning, by welding it using an arc welder or by someone using a power tool on the roof and scraping the cord to the power tool on the metal edge of the roof. He did not testify as to the frequency of such occurrences.

Considering the foregoing evidence in the light most favorable to the plaintiffs, as we must, we are of the opinion that Gtech and SCC failed to negate the element of legal cause or to establish that the plaintiffs could not prove legal cause. In our view, there is a genuine dispute as to whether the method of installation of the satellite antenna was a substantial factor in bringing about the fire that destroyed the plaintiffs' market and as to whether electrification of the roof by some method was reasonably foreseeable.

We next consider whether there is some policy that relieves the defendants of liability in this case. Liability is not necessarily imposed for every act in a chain of causation that leads to injury. This court has said, "legal cause connotes a policy decision by the judiciary to deny liability for otherwise actionable conduct. It requires the courts to establish the boundary of legal liability, using mixed considerations of logic, common sense, justice, policy, and precedent." Waste Management, Inc., 15 S.W.3d at 431 (internal citations omitted); See also Mullins v. Seaboard Coastline Railway, 517 S.W.2d 198, 201 (Tenn. Ct. App. 1974). One of the rules of law that will relieve a negligent actor from liability is the doctrine of intervening and superseding cause.

That doctrine, which survived the Tennessee Supreme Court's adoption of comparative fault, provides that a negligent actor will be relieved from liability when a new and independent cause intervenes to produce a result that could not have been foreseen. The customary explanation of the doctrine is that an independent, intervening cause breaks the chain of legal causation between the original actor's conduct and the eventual injury. McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 905 (Tenn. 1996); Haynes v. Hamilton County, 883 S.W.2d 606, 612 (Tenn. 1994); Waste Management, Inc., 15 S.W.3d 425 at 432. The doctrine applies only when the intervening act (1) was sufficient by itself to cause the injury, (2) was not reasonably foreseeable to the negligent actor, and (3) was not a normal response to the negligent actor's conduct. Id..

The trial court may have determined the negligent installation of the parking lot lights on the roof of the plaintiffs' market by Shoke Gahtes was an intervening act. Whether Shoke Gahtes' work amounted to an intervening act is, in our view, dependent upon whether electrification of the roof from some source was reasonably foreseeable. We have already determined that to be a disputed material fact in this case. Certainly, there were other causes of this fire. If, however, it was reasonably foreseeable that the roof could become electrified from some source, the alleged negligence of Gtech and SCC may have been a contributing factor to be compared with the fault of others. We, therefore, reverse the trial court's granting of a summary judgment.

## IV. CONCLUSION

The judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion. The costs of this appeal shall be taxed to Gtech Corporation and Specialized Communications Companies, Inc.

_____
DONALD P. HARRIS, SENIOR JUDGE